[S.F. No. 24377. Nov. 18, 1985.]

COUNTY OF SONOMA, Petitioner, v.
STATE ENERGY RESOURCES CONSERVATION AND
DEVELOPMENT COMMISSION, Respondent;
PACIFIC GAS AND ELECTRIC COMPANY et al.,
Real Parties in Interest.

362

**COUNSEL**

Derek J. Simmons and Simmons & Wilhelm for Petitioner.

William M. Chamberlain, Steven M. Cohn and Stephen H. Burger for Respondent.

Robert Ohlbach, John B. Gibson, Dan G. Lubbock, Hanna & Morton, Edward S. Renwick, R. Lee Roberts, Cynthia L. Burch, Lee Smith, McDonough, Holland & Allen and Richard E. Brandt for Real Parties in Interest.

**OPINION**

**REYNOSO, J.**—The issue presented by this case is the constitutionality of provisions in Public Resources Code section 25531 for judicial review exclusively by this court of certain decisions of the State Energy Resources Conservation and Development Commission (Energy Commission) pertaining to construction projects for which the Public Utilities Commission (PUC) must issue a certificate of public convenience and necessity.[1] We shall conclude that the statutory provisions are a proper exercise of the Legislature's broad powers over matters within the purview of the PUC.

---

[1] All section references are to the Public Resources Code unless otherwise indicated.

The Warren-Alquist State Energy Resources Conservation and Development Act (Energy Act) (§ 25000 et seq.), enacted in 1974, established the Energy Commission (§ 25200) to implement announced legislative objectives of encouraging and coordinating research into energy problems, promoting energy conservation, and assuring statewide environmental, public safety, and land use goals (see §§ 25001-25007). Among the Energy Commission's duties is that of exercising its "exclusive power to certify all sites and related facilities," i.e., facilities by which electricity is generated from thermal energy, together with associated electric transmission lines. (§§ 25500, 25119, 25110, 25120, 25107.)[2] Section 25500 provides that the Energy Commission's certificate supersedes any statute, ordinance, regulation, or permit requirement of any state, local, or regional agency or (insofar as permitted by federal law) of any federal agency. (Fn. 2, *ante.*)

If the Energy Commission's certificate is issued to a public utility, however, construction of the certified facility cannot proceed without issuance by the PUC of a certificate of public convenience and necessity. (Pub. Util. Code, § 1001.) In 1971, three years before adoption of the Energy Act, Public Utilities Code section 1001 was amended to require the PUC to add the following factors to those it considers as a basis for granting such a

---

[2]Section 25500 provides: "In accordance with the provisions of this division, the commission shall have the exclusive power to certify all sites and related facilities in the state, whether a new site and related facility or a change or addition to an existing facility. The issuance of a certificate by the commission shall be in lieu of any permit, certificate, or similar document required by any state, local or regional agency, or federal agency to the extent permitted by federal law, for such use of the site and related facilities, and shall supersede any applicable statute, ordinance, or regulation of any state, local, or regional agency, or federal agency to the extent permitted by federal law.

"After the effective date of this division, no construction of any facility or modification of any existing facility shall be commenced without first obtaining certification for any such site and related facility by the commission as prescribed in this division."

Section 25119 provides: "'Site' means any location on which a facility is constructed or is proposed to be constructed."

Section 25110 provides: "'Facility' means any electric transmission line or thermal powerplant, or both electric transmission line and thermal powerplant, regulated according to the provisions of this division."

Section 25120, as amended in 1978, provides: "'Thermal powerplant' means any stationary or floating electrical generating facility using any source of thermal energy, with a generating capacity of 50 megawatts or more, and any facilities appurtenant thereto. Exploratory, development, and production wells, resource transmission lines, and other related facilities used in connection with a geothermal exploratory project or a geothermal field development project are not appurtenant facilities for the purposes of this division."

Section 25107 provides: "'Electric transmission line' means any electric powerline carrying electric power from a thermal powerplant located within the state to a point of junction with any interconnected transmission system. 'Electric transmission line' does not include any replacement on the existing site of existing electric powerlines with electric powerlines equivalent to such existing electric powerlines or the placement of new or additional conductors, insulators, or accessories related to such electric powerlines on supporting structures in existence on the effective date of this division or certified pursuant to this division."

certificate: community, historical and aesthetic values; recreational and park areas; and influence on the environment. (Stats. 1971, ch. 68, § 3, ch. 1631, §§ 1, 3.) The 1974 Legislature, in addition to enacting the Energy Act, further amended Public Utilities Code section 1001 to provide that with respect to a thermal powerplant or electric transmission line for which an Energy Commission certificate is required, (1) the PUC may not grant a certificate of public convenience and necessity until after the Energy Commission certificate has been obtained and (2) the latter certificate is conclusive as to the matters it determines and supplants consideration by the PUC of the additional factors prescribed in the 1971 amendment. (Stats. 1974, ch. 1195, § 10.) In 1981 the substance of these provisions was transferred from section 1001 to section 1002 of the Public Utilities Code. (Stats. 1981, ch. 573, §§ 2, 3.)[3]

The Energy Act prescribes procedures for judicial review of Energy Commission decisions and provides that apart from those procedures no court has jurisdiction over Energy Commission matters except to enforce the commission's decisions. (§ 25531, subd. (c).)[4] The general judicial review provision is for challenge of commission decisions by way of writ of mandate filed in the superior court. (§ 25901.)[5] The sole exception is the provisions

---

[3]Public Utilities Code section 1002 now provides in pertinent part: "(a) The commission, as a basis for granting any certificate pursuant to Section 101 shall give consideration to the following factors: [¶] (1) Community values. [¶] (2) Recreational and park areas. [¶] (3) Historical and aesthetic values. [¶] (4) Influence on environment. . . . [¶] (b) With respect to any thermal powerplant or electrical transmission line for which a certificate is required pursuant to the provisions of Division 15 (commencing with Section 25000) of the Public Resources Code, no certificate of public convenience and necessity shall be granted pursuant to Section 1001 without such other certificate having been obtained first, and the decision granting such other certificate shall be conclusive as to all matters determined thereby and shall take the place of the requirement for consideration by the commission of the four factors specified in subdivision (a) of this section."

[4]Section 25531, subdivision (c), provides: "Subject to the right of judicial review of decisions of the commission, no court in this state shall have jurisdiction to hear or determine any case or controversy concerning any manner which was, or could have been, determined in a proceeding before the commission, or to stop or delay the construction or operation of any thermal powerplant except to enforce compliance with the provisions of a decision of the commission."

[5]Section 25901 provides: "(a) Within 30 days after the commission issues its determination on any matter specified in this division, except as provided in Section 25531, any aggrieved person may file with the superior court a petition for a writ of mandate for review thereof. Failure to file such an action shall not preclude a person from challenging the reasonableness and validity of a decision in any judicial proceedings brought to enforce such decision for other civil remedies. [¶] (b) The evidence before the court shall consist of the record before the commission, and any other relevant facts which, in the judgment of the court, should be considered in determining the validity of any decision of the commission. [¶] (c) Except as otherwise provided herein, the provisions of subdivisions (f) and (g) of Section 1094.5 of the Code of Civil Procedure shall govern proceedings pursuant to this Section."

in section 25531 for judicial review of commission decisions on applications for certification of sites and related facilities that also must be certified by the PUC. That limited class of Energy Commission decisions is made subject to judicial review in the same manner as PUC decisions on the application for a certificate of public convenience and necessity for the same site and related facility. (§ 25531, subds. (a) and (b).)[6] Since those PUC decisions may be reviewed only by this court (Pub. Util. Code, §§ 1756-1759), the operative effect of section 25531 is to give this court exclusive jurisdiction over Energy Commission decisions that comprise a necessary ingredient of the certificate issued by the PUC. The issue posed by this case is whether section 25531's provision for our exclusive jurisdiction is allowed by the California Constitution.

Before us is a petition by the County of Sonoma for review of a decision by respondent Energy Commission granting real party in interest Pacific Gas and Electric Co. (PG&E) certification of a geothermal power plant in Lake County and a related 43-mile electric transmission line in Sonoma County. The petition claims numerous defects in the decision but prays in the alternative that we deny the petition for lack of jurisdiction on the ground that the judicial review provisions of section 25531 are unconstitutional.

Petitioner has not briefed the merits of its challenge to the decision, and its counsel stated at oral argument that if this court were to rule that section 25531 and related provisions divesting all other courts of jurisdiction to review commission certification of electric power facilities are constitutionally valid, petitioner would withdraw its request for any further review and concede that the commission's present decision may stand.

Section 25903 provides that if the provision of section 25531 for judicial review of Energy Commission certification decisions exclusively by this

---

[6]Section 25531, subdivisions (a) and (b), provide: "(a) The decisions of the commission on any application of any electric utility for certification of a site and related facility shall be subject to judicial review in the same manner as the decisions of the Public Utilities Commission on the application for a Certificate of Public Convenience and Necessity for the same site and related facility. [¶] (b) No new or additional evidence may be introduced upon review and the cause shall be heard on the record of the commission as certified to by it. The review shall not be extended further than to determine whether the commission has regularly pursued its authority, including a determination of whether the order or decision under review violates any right of the petitioner under the United States Constitution or the California Constitution. The findings and conclusions of the commission on questions of fact shall be final and shall not be subject to review, except as provided in this article. Such questions of fact shall include ultimate facts and the findings and conclusions of the commission. A report prepared by, or an approval of, the commission pursuant to Section 25510, 25514, 25516, or 25516.5, or subdivision (b) of Section 25520.5, shall not constitute a decision of the commission subject to judicial review."

court are held invalid, such decisions shall be reviewed by the superior court.[7] We are advised that petitioner has commenced a mandate proceeding in the superior court so as to obtain review of the present commission decision there if petitioner's challenge to our jurisdiction under section 25531 should succeed.

Petitioner contends that to confine to this court alone the jurisdiction to review the Energy Commission's decision granting the certification to PG&E, in accordance with section 25531 and related sections, infringes on the jurisdiction of the superior courts granted by article VI, section 10, of the California Constitution.[8] Petitioner argues that sections 1756 to 1759 of the Public Utilities Code, giving this court exclusive jurisdiction to review decisions of the PUC, are valid only by virtue of article XII of the Constitution, which gives the Legislature broad powers to confer authority upon the PUC and to provide for judicial review of its decisions, and that because article XII does not specify the Energy Commission or any other commission or agency except the PUC, it does not allow the legislation here in question. We think, however, that the close relationship between the functions of the PUC and the narrow class of Energy Commission decisions affected by section 25531 brings that section's judicial review provisions within the broad legislative authority over PUC matters conferred by article XII.

That article gives the Legislature comprehensive powers over PUC matters. Section 5 of article XII, adopted in 1974, provides that "[t]he Legislature has plenary power, unlimited by the other provisions of this constitution but consistent with this article, to confer additional authority and jurisdiction upon the [PUC and] to establish the manner and scope of review of commission action in a court of record . . . ." Section 5 in effect restates provisions in former sections 22 and 23 of article XII, originally adopted in 1911. (See article XII, section 9, providing that "[t]he provisions of this article restate provisions of the Constitution in effect immediately prior to the effective date of this amendment and make no substantive

---

[7]Section 25903 provides: "If any provision of subdivision (a) of Section 25531, with respect to judicial review of the decision on certification of a site and related facility, is held invalid, judicial review of such decisions shall be conducted in the superior court subject to the conditions of subdivision (b) of Section 25531. The superior court shall grant priority in setting such matters for review, and the appeals from any such review shall be given preference in hearings in the Supreme Court and courts of appeal."

[8]The initial two paragraphs of article VI, section 10, provide: "The Supreme Court, courts of appeal, superior courts, and their judges have original jurisdiction in habeas corpus proceedings. Those courts also have original jurisdiction in proceedings for extraordinary relief in the nature of mandamus, certiorari, and prohibition. [¶] Superior courts have original jurisdiction in all causes except those given by statute to other trial courts."

change.") Former sections 22 and 23 both declared the power of the Legislature to confer powers respecting public utilities upon the PUC to be "plenary" and "unlimited by any provision of this Constitution." The foregoing provisions empower the Legislature not only to restrict judicial review of PUC decisions, as by eliminating the jurisdiction of courts other than this one to conduct such review (*Pacific Telephone etc. Co.* v. *Eshleman* (1913) 166 Cal. 640, 689, 701 [137 P. 1119]), but also to expand the scope of this court's review powers beyond the jurisdiction provided in article VI of the Constitution (*Southern Calif. Edison Co.* v. *Railroad Com.* (1936) 6 Cal.2d 737, 748 [59 P.2d 808]).

In electing to exercise these constitutional powers by channeling judicial review of PUC decisions directly and exclusively to this court (Pub. Util. Code, §§ 1756-1759), the Legislature sought to expedite the final operative effect of those decisions. In furtherance of that same proper objective, the Legislature provided in section 25531 that certain Energy Commission decisions also are reviewable directly and exclusively by this court. Application of the latter provision is limited to Energy Commission decisions that are a statutory prerequisite to approval by the PUC of thermoelectric power projects to be constructed by public utilities (Pub. Util. Code, § 1002, subd. (b); fn. 3, *ante*). Without section 25531, PUC authorization of such a project might be substantially delayed until judicial proceedings to review the Energy Commission's certification of the project were completed not only in superior court but in the Court of Appeal and this court as well. Thus, the central purpose of section 25531 is to expedite the operative effect of certain certificates of public convenience and necessity issued by the PUC. The question before us is whether enactment of the section was a proper exercise of the Legislature's broad powers over PUC matters conferred by article XII.

We think it was. "In considering the constitutionality of a legislative act we presume its validity, resolving all doubts in favor of the Act. Unless conflict with a provision of the state or federal Constitution is clear and unquestionable, we must uphold the Act. [Citations]." (*California Housing Finance Agency* v. *Elliott* (1976) 17 Cal.3d 575, 594 [131 Cal.Rptr. 361, 551 P.2d 1193]; accord, *Eye Dog Foundation* v. *State Board of Guide Dogs for the Blind* (1967) 67 Cal.2d 536, 544 [63 Cal.Rptr. 21, 432 P.2d 717].)

Both the breadth of the Legislature's powers over PUC matters and the lengths to which this court has gone to infer legislative powers from con-

stitutional provisions are illustrated by *Pickens* v. *Johnson* (1954) 42 Cal.2d 399 [267 Cal.Rptr. 801]. The issue in that case was whether legislation for assignment of retired judges to active judicial duties was authorized by a constitutional provision that merely empowered the Legislature to "provide for the payment of retirement salaries to [State] employees" and "to fix and . . . change the requirements and conditions for retirement" (Const., former art. IV, § 22a, adopted in 1930). Upholding the legislation, this court said:

"This type of legislation, both constitutional and statutory, is not new in this state. The Public Utilities Commission has been established under a constitutional enabling act with full power conferred on the Legislature to enact legislation even contrary to any other provisions of the Constitution provided it be cognate and germane to the regulation and control of public utilities. (Const., art. XII, § 22; *Pacific Tel. & Tel. Co.* v. *Eshleman,* 166 Cal. 640 [137 P. 1119, Ann. Cas. 1915C 822, 50 L.R.A.N.S. 652].) Likewise the Industrial Accident Commission has been set up under an enabling act whereby the Legislature is expressly vested with plenary power 'unlimited by any provision of this Constitution, to create, and enforce a complete system of workmen's compensation. . . .' (Const., art. XX, § 21; *Western Metal Supply Co.* v. *Pillsbury,* 172 Cal. 407 [156 P. 491, Ann.Cas. 1917E 390].)

"Under the foregoing enabling acts the Legislature has enacted laws which, as interpreted by the courts, are controlling, as to the subjects properly legislated upon, over other general provisions of the Constitution and general laws.

"So here the Constitution has in general terms conferred upon the Legislature the power to establish a system for the retirement of judges. The Legislature has done so and has imposed as a condition of retirement that retired judges so long as they receive retirement allowances, shall continue to be judicial officers of the state and with their permission shall be subject to call for judicial service by assignment for that purpose by the chairman of the Judicial Council.

"It would seem to be beyond question that the provision for the assignment and service of a retired judge in accordance with the statute bears a reasonable relationship to a system of judges' retirement. . . ." (*Id.,* at pp. 404-405.)

Especially pertinent here are decisions which hold that statutes confining judicial review of administrative decisions to the appellate courts are within

legislative powers implied, but not specified, by the Constitution. *Loustalot v. Superior Court* (1947) 30 Cal.2d 905, 912-913 [186 P.2d 673], held that such a statute was authorized by former article XX, section 21, giving the Legislature "plenary power" to "create, and enforce a complete system of workmen's compensation" including "an administrative body with all the requisite governmental functions to determine any dispute or matter arising under such legislation, to the end that the administration of such legislation shall accomplish substantial justice in all cases expeditiously, inexpensively, and without incumbrance of any character." *Thaxter v. Finn* (1918) 178 Cal. 270, 275 [173 P. 163], found authority for such a statute in an earlier version of article XX, section 21, authorizing the Legislature to "provide for the settlement of any disputes arising under the legislation contemplated by this section, by arbitration, or by an industrial accident board, by the courts, or by either any or all of these agencies, anything in this constitution to the contrary notwithstanding." *Dept. of Alcoholic Bev. Control v. Superior Court* (1968) 268 Cal.App.2d 67 [73 Cal.Rptr. 780] upheld a statute confining review of decisions of the Alcoholic Beverage Control Appeals Board to the appellate courts by relying on provisions of article XX, section 22, that board orders "shall be subject to judicial review," that constitutional provisions and laws inconsistent with the section are repealed, and that the section's provisions are self-executing, "but nothing herein shall prohibit the Legislature from enacting laws implementing and not inconsistent" with the section. The court concluded that the statute fell within the express authority to enact laws implementing the section, and indicated that in any event the Legislature has implied authority to implement self-executing constitutional provisions through legislation that does not unduly interfere with constitutional rights. (*Id.*, at p. 74.)

In light of the strong presumption of the constitutionality of legislative acts, we conclude that the Legislature's power to enact the judicial review provisions of section 25531 is implied by the comprehensive authority given the Legislature by article XII over the operations of the PUC. To expedite the operative effect of the PUC's acts, statutes enacted pursuant to article XII have for over seven decades made PUC decisions reviewable only by this court. The Energy Act was adopted during the national energy crisis of 1974 "to ensure . . . a reliable supply of electrical energy" (§ 25001) and "to establish and consolidate the state's responsibility for energy resources . . . and for regulating electrical generating and related transmission facilities" (§ 25006). Section 25531 was carefully tailored to apply only to Energy Commission action on certifications that are prerequisite to issuance of certificates of public convenience and necessity by the PUC. The Legislature thereby sought to expedite the state's ultimate authorization of electric generating plants through not only the Energy Commis-

sion but also the PUC itself.[9] Since section 25531 is a means of implementing and facilitating the PUC's licensing of thermoelectric power facilities sought to be constructed and operated by public utilities, its enactment was authorized by article XII.

Petitioner having agreed to withdraw its request for review of the Energy Commission's decision if we rule that section 25531 is valid, that decision is affirmed.

Bird, C. J., Broussard, J., Grodin, J., and Kaus, J.,* concurred.

**MOSK, J.**—I dissent.

I begin with the observation of a jurist who, with sardonic wit, once declared: I disagree with my colleagues' conclusion for the reasons stated in the majority opinion.

The majority impliedly concede—as all authority compels—that the Legislature may not defeat or materially impair the exercise of the constitutional jurisdiction of a court, including the superior court. " 'The jurisdiction of the system of state courts . . . is defined by section 5 of article VI of the constitution [the predecessor to art. VI, §§ 10 and 11], and . . . the constitutional jurisdiction and powers of the superior court as thus defined can in nowise be trenched upon, lessened, or limited by the legislature.' " (*Sacramento etc. D. Dist.* v. *Superior Court* (1925) 196 Cal. 414, 432 [238 P. 687]; see *Solberg* v. *Superior Court* (1977) 19 Cal.3d 182, 192 [137 Cal.Rptr. 460, 561 P.2d 1148].) The majority then go on to reach a conclusion in startling contradiction to this unassailable principle.

Dissatisfied with a decision of the Energy Resources Conservation and Development Commission (Energy Commission), petitioner has reluctantly complied with the statutory requirement that it may seek review only in this court. It argues that this legislative restriction flies in the face of the constitutional grant of jurisdiction to the superior court where it would prefer to repair. Since petitioner has on its side an unbroken line of decisions supporting its interpretation of the constitutional language at issue and since those decisions are indistinguishable from the facts at hand I would deny

---

[9]The Legislature's purpose to expedite is further demonstrated by section 25903 (fn. 7, *ante*), providing that if the direct review provisions of section 25531 were to be held invalid, the superior court should give section 25531 matters priority and hear them only on the record of the commission, and appeals should be given preference by the appellate courts.

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairperson of the Judicial Council.

the petition for a writ of review and allow petitioner to seek the writ where the Constitution allows: in the superior court.[1]

Three decisions directly on point—two of this court, one of the Court of Appeal—have upheld statutes limiting the superior court's constitutional jurisdiction. Each decision, however, is premised explicitly on provisions in the Constitution empowering the Legislature to enact the statute in question.

Without question the touchstone in this area is *Pacific Telephone etc. Co.* v. *Eshleman* (1913) 166 Cal. 640 [137 P. 1119], which concerned the constitutionality of a statute indistinguishable from the one at hand (see p. 649) conferring exclusive jurisdiction on the Supreme Court to review the proceedings of the Railroad Commission. This court termed as a fact "which cannot be blinked [at] and must be faced" that "the legislature has with deliberation restricted and curtailed the jurisdiction vested in the superior courts of this state by the constitution. *And upon this but one thing can be said. If there be not in the constitution itself warrant and power to the legislature to do this thing, its effort must be declared illegal.*" (*Id.* at p. 652, italics added.)

The cases subsequent to *Eshleman* have followed its rationale without quiver. Each has likewise turned on the finding of an express provision in the Constitution granting the Legislature the right to curtail the jurisdiction of the superior court to review agency decisions.

A unanimous decision written by Justice Traynor, *Loustalot* v. *Superior Court* (1947) 30 Cal.2d 905, 913 [186 P.2d 673], upheld a statute permitting only appellate courts to review the rulings of the Industrial Accident Commission under former article XX, section 21 (now art. XIV, § 4). Justice Traynor explained: "In restricting any interference with the commission's decisions or orders to proceedings in the appellate courts, the Legislature has carried out *the declared policy of the constitutional provision that the commission be unencumbered by any but proceedings in the appellate courts.*" (*Id.* at pp. 912-913, italics added.) The court in *Loustalot* empha-

---

[1]Whether the writ of review sought here is characterized as an exercise of superior court jurisdiction over "all causes" or as a petition for extraordinary relief the result is the same for analytical purposes because in both situations the superior court is granted jurisdiction by article VI, section 10. If this is a proceeding for extraordinary relief petitioner is allowed by article VI to invoke the jurisdiction of any one of three separate courts that are given concurrent original jurisdiction (the superior court, the Court of Appeal, and the Supreme Court); if it is otherwise viewed the only court having original jurisdiction is the superior court.

sized that the workers' compensation act it reviewed followed "almost word for word" the Public Utilities Act upheld in *Eshleman,* and stressed that the plenary power provisions of the Constitution under which the challenged legislation was upheld were *explicitly unlimited by any other provision in the Constitution. (Ibid.)*

Similarly, in *Dept. of Alcoholic Bev. Control* v. *Superior Court* (1968) 268 Cal.App.2d 67 [73 Cal.Rptr. 780], a unanimous court upheld a statute that limited review of decisions of the Department of Alcoholic Beverage Control to the appellate courts. Finding that the legislation was "obviously patterned" and "obviously modeled" on statutes upheld in *Loustalot,* Justice Tamura concluded that the limitation was authorized by the "comprehensive" powers conferred on the Legislature in article XX, section 22, which included the express power to enact laws to implement that section. (*Id.* at pp. 73-75.)

In summary, each decision upholding elimination by statute of the superior court's original jurisdiction to review agency decisions is bottomed on language in the Constitution granting the Legislature plenary and constitutionally permissible power to determine the method and scope of review of decisions of the particular commission in question.

Is there any provision in the Constitution that meets the absolute requirements of the *Eshleman* test, i.e., one that by its terms gives the Legislature broad power unlimited by any other constitutional provision to control the review of Energy Commission decisions?

The majority claim to find such a provision in article XII, section 5. They are plainly wrong. Article XII, section 5, which deals with the Public Utilities Commission and the Public Utilities Commission alone, declares in relevant part as follows: "The Legislature has plenary power, unlimited by the other provisions of this constitution but consistent with this article, . . . to establish the manner and scope of review of *commission* action in a court of record . . . ." (Italics added.) Although in express terms the provision gives the Legislature power to control the review of PUC decisions, neither explicitly nor implicitly does it give it such power with regard to decisions of the Energy Commission, a separate and distinct statutory agency. Thus, no matter how repeatedly the majority assert that article XII, section 5, stands as constitutional authorization for the Legislature to change the jurisdiction of the courts, it simply does not contain any reference to the Energy Commission.

Until today a jurisdictional statute such as Public Resources Code section 25531 has been struck down without hesitation if it lacked the required constitutional authorization. *Great Western Power Co.* v. *Pillsbury* (1915) 170 Cal. 180 [149 P. 35], applied the *Eshleman* constitutional test to a provision of the Roseberry Act (Stats. 1911, ch. 399, § 18, p. 804) giving the superior court exclusive original jurisdiction to review awards of the Industrial Accident Commission, which at that time was a creature of statute only. The constitutional question was handled with brevity: "Under these circumstances, there appears to be no occasion for extended discussion of the constitutional point. Let us say, in a word, that, in the absence of some *special* constitutional authorization—and there was none such when the Roseberry Act passed—the constitutional jurisdiction of this court could not be taken away or impaired by legislative act. (*Pacific T. & T.* v. *Eshleman,* 166 Cal. 640, 647, 690 [other citations omitted].) The Roseberry Act was not, therefore, effective to prevent application to this court to exercise its original jurisdiction by way of certiorari." (*Great Western Power, supra,* at pp. 182-183, italics added.)[2]

The only difference between *Great Western Power* and the case at hand is the identity of the court whose constitutional grant of concurrent jurisdiction the Legislature sought to eliminate: here the superior court, there the Supreme Court.[3] *Great Western Power* is thus dispositive of this case since section 25531, like the Roseberry Act, has no constitutional parentage.

The majority use an old ploy: when a controlling decision is contrary to preconceived notions, overlook it. They have done so with *Eshleman,* even though, as I have quoted above, its rule of law is crystal clear and has been followed for 72 years.

Today's decision is supported, in reality, only by the majority's belief that it would be practical to confine jurisdiction over review of section 25531 decisions to this court. First, they assert that there is a special relationship between decisions of the Energy Commission and those of the PUC, and impliedly conclude that as the latter are within our exclusive

---

[2]The court was unanimous in *Great Western Power* on the jurisdictional issue, although one justice dissented on other grounds.

[3]The constitutional provisions governing judicial power over writ proceedings are little changed since the Roseberry Act was passed in 1911. Then article VI, section 4, granted the Supreme Court jurisdiction over petitions for writs of certiorari and article VI, section 5, granted superior courts that same power. These grants of jurisdiction were consolidated in article VI, section 10, which now provides that all three levels of courts share original jurisdiction over writ proceedings.

jurisdiction the former should be as well. They thus appear to hold that henceforth the question of jurisdiction will depend not on the constitutional mandate of article VI, section 10, but on the Legislature's determination of what court can most efficiently adjudicate a given cause or proceeding.

Second, the majority justify their decision on the ground that it would be time-consuming to allow the superior court to review section 25531 determinations. While this may be an accurate assessment, the remedy lies in constitutional amendment.[4] Making the trains run on time is neither a function of constitutional jurisprudence nor is it a guide to the meaning of our state's basic document. "[T]he fact that a given law of procedure is efficient, convenient, and useful in facilitating functions of government, standing alone, will not save it if it is contrary to the Constitution." (*INS* v. *Chadha* (1983) 462 U.S. 919, 944 [77 L.Ed.2d 317, 340; 103 S.Ct. 2764, 2780-2781].)

It cannot be denied that in section 25531 the Legislature has with deliberation purported to restrict and curtail the jurisdiction vested in the superior courts of this state by the Constitution. But what the Legislature has thus attempted to do is beyond its power. "And upon this but one thing can be said. If there be not in the constitution itself warrant and power to the legislature to do this thing, its effort must be declared illegal." (*Pacific Telephone etc. Co.* v. *Eshleman, supra,* 166 Cal. at p. 652.) There is no such power in the Constitution. (See *Great Western Power Co.* v. *Pillsbury, supra,* 170 Cal. at pp. 182-183.)

---

[4]Of course, the Legislature has inherent power to create any agency it wishes unless the power is denied it by the Constitution. (*Methodist Hosp. of Sacramento* v. *Saylor* (1971) 5 Cal.3d 685, 691 [97 Cal.Rptr. 1, 488 P.2d 161].) If the Legislature does create such an agency that entity is subject to the Constitution. So, for example, the Constitutional Revision Commission commented on a suggestion that all mention of the PUC be deleted from the Constitution so that the PUC would become merely a creature of the Legislature. It was recognized that the decisions of a purely statutory PUC would be subject to (inter alia) the original jurisdiction of the superior court. (Cal. Const. Revision Com., Background Study Cal. Const. Art. XII, Corporations and Public Utilities (1966) pp. 110-117, by John K. McNulty [hereafter McNulty].) Professor McNulty put it plainly: "If those portions of Article XII that relate to the Public Utilities Commission were simply struck out, the following constitutional powers or provisions would assert themselves to diminish the statutory powers of the Commission: (i) Article I, sec. 14 (just compensation and jury trial in eminent domain proceedings); (ii) Article II, sec. 1 (separation of powers); (iii) *Article VI, secs. 4 and 5 (constitutional jurisdiction of Supreme Court and superior courts);* (iv) possibly Article XI, sec. 6 ('municipal affairs' powers of freeholder charter cities); and (v) Article XI, sec. 19 and Article XIV, sec. 1 (obsolete provisions regarding municipal rate-fixing powers)." (McNulty, *supra,* at p. 117, fn. 16, italics added.)

The Energy Commission, a purely statutory creation, is subject to the same restraints imposed by the Constitution.

For these reasons, I would deny the petition.[5]

Lucas, J., concurred.

---

[5]Much of the material in this dissent was originally prepared by Justice Poché of the Court of Appeal while sitting under assignment in this court.