Filed 12/22/17; pub. order 1/19/18 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| COMMUNITIES FOR A BETTER ENVIRONMENT et al., <br><br>     Plaintiffs and Appellants, <br><br> v. <br><br> STATE ENERGY RESOURCES CONSERVATION AND DEVELOPMENT COMMISSION et al., <br><br>     Defendants and Respondents. | A141299 <br><br> (Alameda County Super. Ct. No. RG13681262) |

The State Energy Resources Conservation and Development Commission (Energy Commission) is the state agency exclusively empowered to license thermal power plants of over 50 megawatts capacity. (Pub. Resources Code, §§ 25120, 25500, 25517; see *City of Sonoma v. State Energy Resources Conservation etc. Com.* (1985) 40 Cal.3d 361, 364–365 (*Sonoma*).)[1] Indeed, pursuant to section 25500, the Energy Commission possesses "the exclusive power to certify all sites and related facilities in the state, whether a new site and related facility or a change or addition to an existing facility" and "[t]he issuance of a certificate by the commission shall be in lieu of any permit, certificate, or similar document required by any state, local or regional agency, or federal agency to the extent permitted by federal law, for such use of the site and related facilities . . . ." Subdivision (a) of section 25531 provides that Energy Commission decisions "on any

---

[1] All statutory references are to the Public Resources Code unless otherwise indicated.

1

application for certification of a site and related facility are subject to judicial review by the Supreme Court of California." Moreover, subdivision (b) of section 25531 circumscribes the scope of Supreme Court review in such matters by mandating that Energy Commission factual findings "are final and are not subject to review . . . ." Appellants Communities for a Better Environment and Center for Biological Diversity (collectively Communities or appellants) filed the instant action in Alameda County Superior Court seeking a declaration that both subdivisions of section 25531 are unconstitutional on their face. The trial court, however, sustained demurrers to Communities' complaint, without leave to amend, on the ground that the issues involved were not ripe for judicial resolution. As a result, the trial court dismissed the matter with prejudice. Communities now challenges this dismissal on several grounds, including the trial court's ripeness determination. Because we disagree with the trial court's conclusion that this matter is not currently ripe for review, we reverse.

## I. BACKGROUND

According to the allegations in Communities' complaint for declaratory and injunctive relief (Complaint),[2] both appellants are nonprofit organizations involved in environmental protection issues throughout California. Appellants have "participated in" and "participated as a party in" a number of specified siting proceedings before the Energy Commission in the past, are currently participating in specified ongoing certification proceedings, and intend to continue participating in such proceedings in the future. Appellants assert that they "have a constitutional right to, and a beneficial interest in, judicial review of Energy Commission certifications in the lower courts under a scope of review that assesses whether the decision was supported by the facts." Appellants state their constitutional rights are essential to fulfillment of their respective missions, and the injury caused by denial of these rights—their inability to seek review in the lower courts and to challenge the Energy Commission's factual findings—can only be remedied

---

[2] As discussed further below, when reviewing an order sustaining a demurrer, we treat the demurrer " ' "as admitting all material facts properly pleaded." ' " (*Carloss v. County of Alameda* (2015) 242 Cal.App.4th 116, 121, fn. 2 (*Carloss*).)

2

through judicial intervention. Specifically, they claim that section 25531 is unconstitutional under article VI, section 10 of the California Constitution, "which provides original, non-exclusive jurisdiction over mandamus proceedings to the superior courts, courts of appeal, and Supreme Court alike." Appellants also contend that section 25531 violates the constitutional separation of powers doctrine by improperly limiting the power of the judiciary to assess the factual findings underlying Energy Commission licensing decisions.

The Complaint details the history of judicial review for Energy Commission certification decisions. When the Energy Commission was established in 1974 by the Warren-Alquist State Energy Resources Conservation and Development Act (Act), power plants had to obtain both a certification from the Energy Commission and a Certificate of Public Convenience and Necessity from the California Public Utilities Commission (PUC). At that time, the Act required that judicial review of an Energy Commission certification be conducted in the same manner as judicial review of the related PUC-issued certificate. Between 1974 and 1996, such PUC decisions were reviewable solely in the Supreme Court, and thus Energy Commission siting decisions were similarly subject to judicial review only by the high court. (See generally *Sonoma*, *supra*, 40 Cal.3d at pp. 363–367.)

This practice was scrutinized by the Supreme Court in 1985 in *Sonoma*, *supra*, 40 Cal.3d 361, and found to pass constitutional muster. The petitioner in that case—like Communities here—argued that section 25531, as it then existed, impermissibly infringed on the jurisdiction of the superior courts granted by article VI, section 10, of the California Constitution. (*Sonoma*, at p. 367.) In rejecting this constitutional challenge, the *Sonoma* court noted that the operative effect of section 25531 was to give the high court "exclusive jurisdiction over Energy Commission decisions that comprise a necessary ingredient of the certificate issued by the PUC." (*Sonoma*, at p. 366; see also *id*. at p. 368 [concluding that the "central purpose" of section 25531 was to "expedite the operative effect of certain certificates of public convenience and necessity issued by the PUC"].) Pursuant to article XII of the California Constitution, the Legislature has been

given "broad powers to confer authority upon the PUC and to provide for judicial review of its decisions . . . ."[3] (*Sonoma*, at p. 367.) On this basis, the Supreme Court concluded that "the close relationship between the functions of the PUC and the narrow class of Energy Commission decisions affected by section 25531 brings that section's judicial review provisions within the broad legislative authority over PUC matters conferred by article XII." (*Sonoma*, at p. 367.)

The Complaint further alleges, however, that, after deregulation of the energy industry in the 1990's, power plant ownership was shifted to independent power producers who do not need a Certificate of Public Convenience and Necessity or any other approval from the PUC to construct a power plant. Rather, they may proceed solely on the basis of an Energy Commission certification. At the same time, the Legislature reportedly concluded that deregulation required broader judicial oversight of PUC decisions. In 1996, the Legislature amended the PUC's judicial review statute, allowing for review of adjudicatory PUC decisions in the courts of appeal as well as by the Supreme Court. (Stats. 1996, ch. 855, § 5.) Two years later, in 1998, the Legislature extended appellate court review to additional PUC decisions, stating: "The Legislature finds and declares that the conversion of the energy, transportation, and telecommunications industries from traditional regulated markets to competitive markets necessitates a change in the judicial review of Public Utilities Commission decisions that pertain to those industries. The Legislature finds that the activities of the energy, telecommunications, and transportation industries will require expanded access to the court system at all levels." (Stats. 1998, ch. 886, § 1.5(a).) The Legislature further stated that its intent was to "conform judicial review of the Public Utilities Commission decisions that pertain to utility service providers with competitive markets to be consistent with judicial review of the other state agencies." (*Id.* § 1.5(b).) Since,

---

[3] In fact, section 5 of article XII provides that "[t]he Legislature has plenary power, *unlimited by the other provisions of this constitution* but consistent with this article, to confer additional authority and jurisdiction upon the commission, to establish the manner and scope of review of commission action in a court of record, and to enable it to fix just compensation for utility property taken by eminent domain." (Italics added.)

4

between 1996 and 2001, section 25531 still tied review of Energy Commission siting decisions to review of PUC certificates, the effect of these statutory changes was to make those Energy Commission decisions also reviewable by courts of appeal.

However, as the Complaint additionally asserts, in 2001, the Legislature amended section 25531 to remove reference to the PUC and again make Energy Commission certificates reviewable only by the Supreme Court. Communities claims that there are no reported instances where the Supreme Court has conducted a substantive review of a power plant siting decision under section 25531 since deregulation, essentially allowing the Energy Commission to act as "its own court of last resort." Moreover, Communities asserts, this practice can no longer be sanctioned by the Supreme Court's *Sonoma* decision, as the regulatory landscape has fundamentally changed, and Energy Commission certification decisions are no longer necessarily linked to PUC review. The Complaint thus seeks a declaratory judgment that section 25531 is, in its current incarnation, unconstitutional and void on its face.

As stated above, in response to the filing of the Complaint, both the Energy Commission and the California State Controller (Controller) filed demurrers in the superior court, arguing, among other things, that, because the Complaint was not grounded in any actual existing controversy among the parties, it sought an advisory opinion only and thus was not ripe for review. After hearing, the trial court sustained the demurrers on ripeness grounds,[4] stating: "While the parties have differing positions as to the constitutionality of Public Resources Code section 25531, subdivision (a), there is no dispute as to its construction. Further, the facts alleged concern no particular action by Defendants that is appropriate for immediate judicial resolution. Still further, there is no current dispute between the parties that would give rise to any imminent or significant

---

[4] The trial court declined to address several alternate arguments made by the Controller on demurrer, largely involving the appropriateness of the Controller as a defendant. Similarly, although the Controller also filed a motion to strike Communities' request for injunctive relief—which the Energy Commission subsequently joined—the court did not rule on this motion. Under these circumstances, we do not express an opinion with regard to the merits of any of these ancillary matters.

5

hardship to Plaintiff (or Defendants)." Since the trial court also concluded that Communities had failed to meet its burden to show how the Complaint could be amended to state a justiciable cause of action, it dismissed the matter with prejudice. The court subsequently entered judgment in favor of the Energy Commission and the Controller, and notice of entry was given. Communities' timely notice of appeal now brings the matter before this court.

## II. DISCUSSION

### A. *Standard of Review*

Our standard of review on appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend is well settled. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966.) We give the complaint "a reasonable interpretation," and treat the demurrer "as admitting all material facts properly pleaded." (*Id.* at p. 967.) Indeed, "[w]e 'must accept as true not only those facts alleged in the complaint but also facts that may be implied or inferred from those expressly alleged.' " (*Wagner v. Apex Marine Ship Management Corp.* (2000) 83 Cal.App.4th 1444, 1448.) While we do not assume the truth of contentions, deductions, or conclusions of law, we can consider matters which may be judicially noticed. (*Aubry v. Tri-City Hospital Dist.*, at p. 966.)

" 'When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action.' " (*Carloss*, *supra*, 242 Cal.App.4th at p. 123.) This is a question subject to our independent judgment. (*Santa Teresa Citizen Action Group v. State Energy Resources Conservation & Development Com.* (2003) 105 Cal.App.4th 1441, 1445 (*Santa Teresa*).) If we would otherwise affirm the trial court's demurrer determination, but the demurrer was "sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm." (*Carloss*, at p. 123.)

As stated above, the trial court sustained the demurrers in this case on the ground that the underlying controversy was not ripe for resolution. Whether a matter is ripe for adjudication is a question of law which is subject to our independent review on appeal.

6

(*Wilson & Wilson v. City Council of Redwood City* (2011) 191 Cal.App.4th 1559, 1582 (*Wilson*).)  Similarly, the question of whether a claim presents an "actual controversy" in order to qualify for declaratory relief pursuant to Code of Civil Procedure section 1060 is also a legal matter that we review de novo.  (*Ibid*.)

**B.** *Ripeness*

"The ripeness requirement, a branch of the doctrine of justiciability, prevents courts from issuing purely advisory opinions." (*Pacific Legal Foundation v. California Coastal Com.* (1982) 33 Cal.3d 158, 170 (*Pacific Legal Foundation*); *Panoche Energy Center, LLC v. Pacific Gas & Electric Co.* (2016) 1 Cal.App.5th 68, 99.) Although the " 'precise content' " of the doctrine is " 'difficult to define and hard to apply,' " generally speaking, a controversy is ripe " 'when it has reached, but has not passed, the point that the facts have sufficiently congealed to permit an intelligent and useful decision to be made.' " (*Pacific Legal Foundation*, at p. 171.) In contrast, unripe cases are those " 'in which parties seek a judicial declaration on a question of law, though no actual dispute or controversy ever existed between them requiring the declaration for its determination.' " (*Wilson*, *supra*, 191 Cal.App.4th at p. 1573.) Unsurprisingly, ripeness is often an issue when a litigant seeks declaratory relief pursuant to Code of Civil Procedure section 1060, as such relief is permissible to resolve "a probable *future controversy* relating to the legal rights and duties of the parties." (*Environmental Defense Project of Sierra County v. County of Sierra* (2008) 158 Cal.App.4th 877, 885 (*Environmental Defense Project*).) Even an action for declaratory relief, however, must still involve an "actual controversy."[5] (Code Civ. Pro., § 1060; see also *Selby Realty Company v. City of Buenaventura* (1973) 10 Cal.3d 110, 117 [an actual controversy for purposes of section 1060 "is one which admits of definitive and conclusive relief by judgment within the field of judicial administration, as distinguished from an advisory opinion upon a particular or hypothetical state of facts"; and therefore "[t]he judgment must decree, not

---

[5] Specifically, pursuant to section 1060 of the Code of Civil Procedure: "Any person interested under a written instrument . . . or who desires a declaration of his or her rights or duties with respect to another, or in respect to, in, over or upon property, . . . may, *in cases of actual controversy relating to the legal rights and duties of the respective parties*, bring an original action or cross-complaint in the superior court for a declaration of his or her rights and duties in the premises, including a determination of any question of construction or validity arising under the instrument or contract . . . . The declaration may be had before there has been any breach of the obligation in respect to which said declaration is sought." (Italics added.)

suggest, what the parties may or may not do"].) Thus, for a probable future controversy to constitute an "actual controversy" for which declaratory relief is appropriate, it must be ripe. (*Environmental Defense Project*, at p. 885.)

In determining whether a controversy is ripe in the context of a request for declaratory relief, we engage in the two-pronged analysis advanced by *Pacific Legal Foundation*: "(1) whether the dispute is sufficiently concrete to make declaratory relief appropriate; and (2) whether the withholding of judicial consideration will result in a hardship to the parties." (*Farm Sanctuary, Inc. v. Department of Food & Agriculture* (1998) 63 Cal.App.4th 495, 502, citing *Pacific Legal Foundation*, *supra*, 33 Cal.3d at pp. 171–173.) "Under the first prong, the courts will decline to adjudicate a dispute if 'the abstract posture of [the] proceeding makes it difficult to evaluate . . . the issues' [citation], if the court is asked to speculate on the resolution of hypothetical situations [citation], or if the case presents a 'contrived inquiry' [citation]. Under the second prong, the courts will not intervene merely to settle a difference of opinion; there must be an imminent and significant hardship inherent in further delay." (*Ibid.*; see also *Wilson*, *supra*, 191 Cal.App.4th at pp. 1582–1585 [acknowledging and applying two-prong analysis].)

On appeal, both the Energy Commission and the Controller argue, citing *Pacific Legal Foundation*, that the trial court correctly dismissed this matter on ripeness grounds because Communities is seeking a purely advisory opinion on the constitutionality of a statute, unmoored to any concrete dispute regarding an actual Energy Commission decision. In particular, respondents each cite *Pacific Legal Foundation* for the proposition that a difference of opinion as to the validity of a statute is "not enough by itself to constitute an actual controversy" between the parties. (See *Pacific Legal Foundation*, *supra*, 33 Cal.3d at p. 173.) Even if this general statement is true, however, we are not convinced that *Pacific Legal Foundation* supports respondents' argument that the instant controversy is unripe.

*Pacific Legal Foundation* involved an action for declaratory relief brought by a group of coastal property owners and the Pacific Legal Foundation as a facial challenge

9

to guidelines adopted by the California Coastal Commission regarding public access to the beach. (*Pacific Legal Foundation*, *supra*, 33 Cal.3d at pp. 162–163.) In analyzing the ripeness issue, the Supreme Court in *Pacific Legal Foundation* acknowledged the fundamental tension underlying ripeness determinations, stating that, while "the ripeness doctrine is primarily bottomed on the recognition that judicial decisionmaking is best conducted in the context of an actual set of facts so that the issues will be framed with sufficient definiteness to enable the court to make a decree finally disposing of the controversy," the requirement "should not prevent courts from resolving concrete disputes if the consequence of a deferred decision will be lingering uncertainty in the law, especially when there is widespread public interest in the answer to a particular legal question." (*Id.* at p. 170.) The high court ultimately found the Coastal Commission guideline challenge not ripe for review because it concluded that, under the circumstances of that case, the parties were inviting the court "to speculate as to the type of developments for which access conditions might be imposed, and then to express an opinion on the validity and proper scope of such hypothetical exactions" and that it was "sheer guesswork to conclude that the Commission [would] abuse its authority by imposing impermissible conditions on any permits required." (*Id.* at pp. 172, 174.) Moreover, without the application of the guidelines to an existing project, the court saw no " 'hardship to the parties of withholding court consideration,' " as the difference of opinion regarding the guidelines' validity was "not enough *by itself* to constitute an actual controversy." (*Id.* at pp. 172–173, italics added.)

Thus, in *Pacific Legal Foundation*, the matter was found to be unripe not because it was merely a facial challenge to the guidelines, but because a factual context was necessary in order to resolve the parties' dispute regarding the validity of the challenged guidelines. (*Pacific Legal Foundation*, *supra*, 33 Cal.3d at pp. 169, 172; see also *Wilson*, *supra*, 191 Cal.App.4th at pp. 1572, 1583–1584 [request for declaratory relief regarding a city's power to condemn property not ripe where city was not contractually bound to condemn the property and no condemnation action had been initiated; resolution of the matter would require the court "to speculate not only on the content of the future parking

10

facilities agreement, but also on whether the [c]ity would take the legislative steps necessary to initiate eminent domain proceedings"—circumstances the court dubbed " 'unpredictable future events' "].)  Here, in obvious contrast, no factual context from an individual Energy Commission certification proceeding is necessary, or even useful, to resolution of the constitutional question raised.  Moreover, the constitutional question will necessarily be implicated in *every* future judicial proceeding seeking review of an Energy Commission decision.

On the other hand, we agree with the trial court that the hardship alleged by Appellants—essentially the chilling effect on their advocacy imposed by the severe (and allegedly unconstitutional) limitations on judicial review—is not the type of specific hardship that weighs in favor of ripeness.  (*Pacific Coast Foundation*, *supra*, 33 Cal.3d at p. 173 [although the presence of the Coastal Commission guidelines may tend to inhibit property owners from planning improvements on their land, the hardship inherent in delaying resolution of their challenge to the guidelines is not imminent or specific enough to be ripe].)

Given the tension between the two prongs of *Pacific Legal Foundation*, we look to cases applying this analysis under similar circumstances and conclude that the most relevant cases support finding ripeness here.  For instance, *Communities for a Better Environment v. California Resources Agency* (2002) 103 Cal.App.4th 98, disapproved on other grounds as stated in *Berkeley Hillside Preservation v. City of Berkeley* (2015) 60 Cal.4th 1086, 1109, fn. 3 (*CBE*), involved significant revisions to the California Environmental Quality Act (CEQA) Guidelines which were adopted by the California Resources Agency in 1998.  (*CBE*, at p. 105.)  An action for declaratory relief was brought by three environmental organizations, including one of the appellants in these proceedings, to challenge several of the revised guidelines.  (*Id.* at p. 107.)  Addressing the ripeness issue, the *CBE* court concluded the question of whether the subject Guidelines facially violated CEQA statutes and case law presented "a concrete legal dispute ripe for our consideration."  (*Id.* at p. 106.)  Noting that there was no question that public agencies must follow the revised guidelines at issue when implementing CEQA,

11

the *CBE* court expressly distinguished *Pacific Legal Foundation*, stating: "This matter stands in contrast to *Pacific Legal Foundation v. California Coastal Commission*, where the issues were not sufficiently concrete to allow judicial resolution *in the absence of a specific factual context*; there, the plaintiffs claimed essentially that administrative guidelines governing development dedications for beach access might in the future be applied contrary to statutory or constitutional law." (*CBE*, at p. 106, italics added.) Thus, the environmental groups' challenge to the CEQA guidelines was ripe because the public agencies were required to apply the guidelines in all future decisions. The court did not discuss the issue of hardship to the plaintiffs, but the apparent lack of identified harm to the environmental groups in a specific case did not preclude a finding that the issue was ripe for decision.

Similarly, in *Environmental Defense Project*, *supra*, 158 Cal.App.4th 877, the plaintiff requested declaratory relief on the issue of whether Sierra County's "streamlined zoning process" violated California's Planning and Zoning Law. (*Id.* at pp. 880–881.) Although the dispute had initially arisen in the context of a landowner's request for a zoning ordinance amendment to remove a prohibition on the subdivision of his land, all of the claims related to this specific project were resolved and dismissed by the plaintiff prior to the trial court's summary judgment hearing in the matter. Thus, only the environmental group's claim for declaratory relief with respect to the validity of the county's streamlined process remained. (*Id.* at pp. 881, 883–884.) On appeal, the county argued, among other things, that the trial court erred in granting declaratory relief because "there was no 'actual controversy' between the parties at the time plaintiff filed its motion for summary judgment." (*Id.* at p. 884.) The appellate court disagreed, concluding as a matter of law that "[t]here was and is an 'actual controversy' between the parties as to whether streamlined zoning violates the Planning and Zoning Law given their different interpretations of the Government Code. Moreover, the county has made it clear that it will continue with streamlined zoning in the future." (*Id.* at pp. 884–887.) On this basis, the court distinguished *Pacific Legal Foundation*, stating: "Unlike the Supreme Court in *Pacific Legal Foundation*, we do not have to guess how the county will

12

interpret and carry out the notice provisions [at issue]." (*Id.* at p. 887.) Moreover, since there was " 'a reasonable expectation that the wrong, if any, [would] be repeated,' " the case presented more than a mere " 'academic question.' " (*Ibid.*) Again, the court did not find it necessary to discuss the hardship prong of *Pacific Legal Foundation*.

In *Steinberg v. Chiang* (2014) 223 Cal.App.4th 338, 344–345 (*Steinberg*), several legislators sought a declaratory judgment that Controller Chiang could not second-guess the legislature's budget estimates, decide they had not passed a truly balanced budget, and withhold their paychecks under the balanced budget provision of the Constitution. Although the budget for the fiscal year that prompted the declaratory action had been resolved, the court held the dispute was ripe because the issue was likely to recur and the legislators were harmed by having their paychecks withheld. (*Id.* at pp. 344–345.) "Unlike *Pacific Legal Foundation* [, *supra*, 33 Cal.3d at pp.] 172, 174 . . . , *Wilson*[, *supra*, 191 Cal.App.4th at p.] 1583 . . . , or *Sanctity of Human Life Network v. California Highway Patrol* (2003) 105, Cal.App.4th 858, 871–872 . . . , we do not need to guess at any additional facts that are *necessary* to our resolution of the issue." (*Steinberg*, at p. 344, original italics.) "Availability of an alternative remedy, such as mandate in a future impasse [citation] . . . , is not generally a basis for denial of declaratory relief [citations] . . . . We thus find that this action presents an actual controversy, and the trial court reasonably found declaratory relief is necessary and proper." (*Id.* at pp. 344–345.)

Finally, Division Five of this district recently addressed the ripeness issue in *California Building Industry Assn. v. Bay Area Air Quality Management Dist.* (2016) 2 Cal.App.5th 1067 (*CBIA*). In that case, the court considered a challenge—including a request for declaratory relief—by the CBIA to district guidelines adopting thresholds of significance for use in analyzing air quality issues under CEQA. (*Id.* at pp. 1072–1076.) After determining that the guidelines were inconsistent with CEQA to the extent they suggested they must be routinely applied to all projects, the appellate court remanded the case to the trial court with instructions to issue a writ invalidating the guidelines to that extent and to consider, for the first time, whether the CBIA might be entitled to declaratory relief. (*Id.* at pp. 1087–1088.)

13

In a petition for rehearing, the district argued that writ relief was inappropriate because the guidelines were nonbinding and review of them was premature given the lack of a specific controversy. (*CBIA*, *supra*, 2 Cal.App.5th at p. 1088.) The *CBIA* court rejected this contention, finding the matter ripe. (*Id.* at pp. 1088–1089.) Specifically, the court compared the district guidelines with those issued by the California Coastal Commission in *Pacific Legal Foundation.* "Unlike the California Coastal Commission guidelines at issue in Pacific Legal Foundation, the District Guidelines do not call for the [thresholds] to be applied to projects on a case-by-case basis." Since they, instead, suggested "a routine analysis," the court found the issue "fit for judicial determination." (*Id.* at p. 1089.) Indeed, in reaching this conclusion, the court quoted the statement from *Pacific Legal Foundation* detailed above that "[t]he ripeness requirement 'should not prevent courts from resolving concrete disputes if the consequence of a deferred decision will be lingering uncertainty in the law, especially when there is widespread public interest in the answer to a particular legal question.' " (*Ibid.*)

In the present case, it is beyond dispute that the constitutional challenge to section 25531 raised by Communities is not dependent in any way on the facts of any particular Energy Commission certification proceeding. Indeed, when the Supreme Court previously addressed related constitutional issues in *Sonoma*, it did so despite the fact that the petitioner did not brief the merits of the underlying certification dispute and had agreed to withdraw its request for review of the Energy Commission's decision if the Supreme Court found section 25531 to be valid, which the high court ultimately did. (*Sonoma*, *supra*, 40 Cal.3d at pp. 366, 371.) Further, as detailed in the Complaint, appellants have appeared in past certification proceedings, are presently participating in ongoing proceedings, and have stated they intend to continue to participate in such proceedings in the future, creating a reasonable expectation that any wrong done to them by the application of section 25531 to an Energy Commission certification proceeding in which they are involved will be repeated. (See *Environmental Defense Project*, *supra*, 158 Cal.App.4th at p. 887.) Indeed, there is no question in this case that the mandate of section 25531 will be routinely and uniformly applied in *every* future challenge to an

14

Energy Commission siting decision, barring a finding of unconstitutionality. Thus, "we do not have to guess" how the statute will be interpreted moving forward.[6] (See *Environmental Defense Project*, at p. 887.)

Finally, although it may be true, as respondents suggest, that there is nothing to preclude Communities from bringing their constitutional challenge in a future action contesting an actual Energy Commission decision, to require them to do so under the present facts seems an elevation of form over substance. Indeed, the potential perils of such an approach can be seen in *Santa Teresa*, *supra*, 105 Cal.App.4th 1441, a decision in which the plaintiffs attempted to challenge a specific Energy Commission power plant certification decision on constitutional grounds. In that litigation, the plaintiffs simultaneously filed petitions for a writ of mandate in the California Supreme Court and in the superior court. (*Id.* at pp. 1444–1445.) The Energy Commission successfully demurred to the plaintiffs' superior court petition based on section 25531 and, while the matter was pending, the Supreme Court summarily denied its petition without obtaining or considering a certified record of the Energy Commission proceeding. (*Id.* at pp. 1445, 1448.) Thereafter, on appeal from the superior court petition, the Third District concluded that, even under these circumstances, "[i]f a writ petition in the California Supreme Court is the exclusive means of obtaining review of a quasi-judicial decision, the Supreme Court's summary denial of such a petition is a final judicial determination *on the merits*." (*Id.* at pp. 1447, 1449.) Since the plaintiffs had received review of their constitutional claims from the Supreme Court, albeit in summary fashion, dismissal of the superior court action was deemed appropriate.[7] This obviously puts appellants in a

_____

[6] In support of its determination that this action is unripe, the trial court observed that there is no dispute among the parties regarding the construction of section 25531. Although true, we believe this is beside the point because the parties have a fundamental dispute regarding the statute's validity as applied to the review of every Energy Commission certification decision. Indeed, as discussed above, the fact that the statute applies unambiguously to all Energy Commission certification decisions actually supports ripeness.

[7] The *Santa Teresa* court expressly concluded that there was no separation of powers concern, because the Supreme Court's review of the executive branch decision

15

Catch-22 situation, particularly given Communities' assertion in the Complaint that the Supreme Court has summarily denied every challenge to an Energy Commission certification since deregulation.

In sum, under all of these circumstances, we conclude that the ripeness requirement should not operate in this case to prevent the trial court from resolving the concrete dispute before it, given that "the consequence of a deferred decision will be lingering uncertainty in the law, especially when there is widespread public interest in the answer to a particular legal question." (See *Pacific Legal Foundation*, *supra*, 33 Cal.3d at p. 170.) The trial court's ripeness determination was therefore error.[8][9]

### III. DISPOSITION

The judgment is reversed. Appellants are entitled to their costs on appeal.

---

was on the merits. (*Santa Teresa*, *supra*, 105 Cal.App.4th at p. 1450.) The court, however, did not address the specific separation of powers argument raised in this case based on subdivision (b) of section 25531. Moreover, because the plaintiffs raised the question of *Sonoma*'s continuing validity only "[o]bliquely," the court deemed that issue to be waived. (*Id.* at pp. 1450–1451.)

[8] In reaching this conclusion, we acknowledge the Controller's argument that section 1061 of the Code of Civil Procedure allows a court to reject a request for declaratory relief in its discretion where a " 'declaration or determination is not necessary or proper at the time under all the circumstances.' " However, the trial court never exercised its discretion in this matter because it concluded that no actual controversy existed, thereby precluding review. Code of Civil Procedure section 1061 thus has no relevance to our analysis of the ripeness question raised in this appeal. (See *Environmental Defense Project*, *supra*, 158 Cal.App.4th at p. 885 ["[o]nce an 'actual controversy' exists*, it is within the trial court's discretion to grant or deny declaratory relief," italics added].)

[9] Given our resolution of this matter, we need not address appellants' other contention—that the trial court abused its discretion by refusing to grant Communities leave to amend the Complaint.

16

_____
KENNEDY, J.*


We concur:


_____
RUVOLO, P. J.


_____
STREETER, J.


*Judge of the Superior Court of California, County of Contra Costa, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**CALIFORNIA COURT OF APPEAL**
**FIRST APPELLATE DISTRICT**
**DIVISION FOUR**

COMMUNITIES FOR A BETTER ENVIRONMENT et al.,
   Plaintiffs and Appellants,
   v.
STATE ENERGY RESOURCES CONSERVATION AND DEVELOPMENT
COMMISSION et al.,
   Defendants and Respondents.

A141299
Alameda County
Sup. Ct. No. RG13681262

BY THE COURT:

    The requests filed on January 11, 2018 that this court's December 22, 2017 opinion be certified for publication is granted.  The Reporter of Decisions is directed to publish said opinion in the Official Reports.

Date:_____   _____P. J.

| | |
|---|---|
| Trial Court: | Alameda County Superior Court |
| Trial Judge: | Hon. Gail Brewster Bereola |
| Counsel for Appellants: | Earthjustice, William Rostov, Tamara Zakim, Stacey P. Geis |
| | Communities for a Better Environment, Shana Lazerow, Roger Lin |
| Counsel for Respondent California State Controller: | Kamala D. Harris, Xavier Becerra Attorneys General of California |
| | Douglas J. Woods Senior Assistant Attorney General |
| | Constance L. LeLouis Supervising Deputy Attorney General |
| | Sylvia A. Cates, Benjamin M. Glickman, P. Patty Li Deputy Attorneys General |
| Counsel for Respondent State Energy Resources Conservation and Development Commission: | California Energy Commission, Michael J. Levy, Gabriel C. Vivas, Melanie Moultry, Taylor G. Rhodes, Kourtney C. Vaccaro, Kirk C. Oliver |
| | Benjamin M. Glickman, P. Patty Li Deputy Attorneys General |