Filed 2/4/22  MHC Operating Limited Partnership v. The Nicholson Family Partnership CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| MHC OPERATING LIMITED PARTNERSHIP, et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> THE NICHOLSON FAMILY PARTNERSHIP, <br><br> Defendant and Appellant. | H048357 <br> (Santa Clara County <br> Super. Ct. No. 19CV361047) |

## I.  INTRODUCTION

Defendant The Nicholson Family Partnership (Nicholson Partnership) leases land to plaintiff MHC Operating Limited Partnership (MHC).  The ground leases expire on August 31, 2022.  Plaintiff MHC manages a mobilehome park on the land.  Defendant has demanded that plaintiff return the land to its preexisting state, that is, without any mobilehome park residents or their property, upon the expiration of the ground leases. Plaintiff MHC has refused and, along with two businesses that operate at the park, plaintiff CountryPlace Mortgage, Ltd. (CountryPlace Mortgage) and plaintiff ECHO Financing LLC (ECHO Financing), and a resident who owns a home at the park, plaintiff Stacy Winkelmann, filed a civil action for declaratory relief regarding the issue.

Defendant filed a motion to compel arbitration and to stay the litigation. Defendant contended that an arbitration with plaintiff MHC should proceed first pursuant to an arbitration provision in their ground leases, and that any remaining claims by the other three plaintiffs (CountryPlace Mortgage, ECHO Financing, and Winkelmann) should be litigated thereafter in court. Defendant also argued that the claims by these other three plaintiffs were not ripe. The trial court denied defendant's motion to compel arbitration based on the possibility of conflicting rulings on a common issue or fact in the arbitral forum and the judicial forum. (Code Civ. Proc., § 1281.2, subd. (c) (section 1281.2(c)).[1]

On appeal, defendant contends that the trial court erred in denying arbitration. For reasons that we will explain, we will affirm the order denying arbitration.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. *The Mobilehome Park*

According to defendant, the Nicholson Partnership and family members have owned the land at issue since the mid-nineteenth century. In the early 1970's, family members entered into four commercial ground leases with the predecessor to plaintiff MHC. The ground leases allowed the lessee (MHC's predecessor) to convert the property from a former pear ranch into a mobilehome park.[2] MHC assumed the original lessee's interest in the ground leases in 1997. The ground leases expire on August 31, 2022.

---

[1] All statutory references hereafter are to the Code of Civil Procedure unless otherwise indicated.

[2] As one of the leases states, "Owner and Tenant contemplate that all of the property will eventually be developed as a mobile home park, but because of its size, both have agreed upon its development in four (4) stages. Each stage shall be covere[d] by a separate lease, each of which, however, will contain similar terms and conditions . . . . Each stage will eventually contain approximately the same number of mobile home spaces."

Each of the four original ground leases contains an arbitration provision. The ground leases' most recent amendment between defendant and plaintiff MHC confirms the terms of the original ground leases and amends the arbitration provision. The amended arbitration provision states that any disputes, claims, or controversies arising out of or relating to the leases must be submitted to binding arbitration at JAMS pursuant to the California Arbitration Act (CAA; § 1280 et seq.).

Plaintiff MHC subleases the property to mobilehome residents. MHC states that it "has not entered into any subtenancy leases that contractually extend beyond the current term of MHC's ground leases."

Plaintiff Winkelmann owns and lives in a home at the mobilehome park. Plaintiff ECHO Financing purchases "manufactured homes," places them in mobilehome communities operated by entities such as plaintiff MHC, and then apparently sells or rents the homes to residents. Plaintiff CountryPlace Mortgage specializes in lending to purchasers of "manufactured and modular housing." Of the 13 loans that CountryPlace Mortgage was servicing in the mobilehome park in March 2020, seven had maturity dates after the August 31, 2022 ground lease expiration date. The loans were secured by the mobilehomes, not by any real property or land.

## B. *Defendant's Demand for Return of the Property Without Subtenants Upon Expiration of the Ground Leases*

Beginning in 2018, defendant communicated with plaintiff MHC regarding the return of the property upon the expiration of the ground leases. Defendant contended that the ground leases and the law "mandated" that MHC deliver the property "free and clear of any and all sub-tenancies," which MHC understood to mean that all park residents and their property had to be removed from the land upon the expiration of the ground leases.[3]

---

[3] Notwithstanding these communications by defendant to plaintiff MHC, the Nicholson family issued a press release in January 2020 stating that they had " 'no plans (continued)

Defendant indicated that it was not interested in the mobilehome business, and that it was considering alternative uses for the property.

Plaintiff MHC disputed defendant's interpretation of the leases. MHC also indicated that state and local law precluded such an obligation, and contended that the landowner – here, defendant – was subject to certain legal requirements if it wanted to change the use of the mobilehome park.

Defendant disagreed, contending that MHC bore the burden of complying with state and local requirements in removing residents. Defendant expressed its intent to file a demand for arbitration.

## C. *The Civil Lawsuit*

Before an arbitration demand was filed with JAMS, plaintiffs MHC, CountryPlace Mortgage, and ECHO Financing filed a civil lawsuit for declaratory and injunctive relief against defendant on December 30, 2019. On January 29, 2020, plaintiffs filed a first amended complaint adding Winkelmann as a plaintiff among other changes.

In the first amended complaint, plaintiffs allege that, upon the expiration of MHC's four leases with defendant on August 31, 2022, the operation of the mobilehome park will revert to defendant. Defendant, however, allegedly claims that "MHC is obligated under its leases to deliver the property to [defendant] free and clear of any and all subtenants (i.e., residents) upon the expiration of its leases with [defendant] on August 31, 2022."

whatsoever to displace anyone,' " that they wanted to "find[] a longer-term plan to protect current residents from being removed," that they were "open to . . . find[ing] a . . . way for current residents to remain on the property well beyond the expiration of the land leases in 2022," and that they were exploring options to protect the mobilehome "residents from being displaced by MHC." The Nicholson family also stated that they had "no current plans for redevelopment." In a letter to the San Jose Planning Commission the following month, however, the Nicholson Partnership objected to the city redesignating the property in the general plan with a mobilehome designation because it would "limit options for future use of the property" and the site "should ultimately be redeveloped with higher density."

4

Plaintiffs allege that defendant's demand would "violate MHC's rights under its leases with [defendant]," because the leases "impose no duty on MHC to evict [the mobilehome] residents" and the demand instead "seeks a violation of the lease terms and the parties' course of dealing." "Second, the demand would require MHC to violate state and San Jose municipal law, which protect mobile home residents . . . from being displaced from their homes unless the landowner—here, [defendant]—complies with certain procedures, which [it] has not even begun to do." Third, the demand "would interfere with MHC's operations, contracts, and prospective economic advantage at [the mobilehome park]," "would cause irreparable harm to the personal and economic interests of mobile home residents and owners, like Winkelmann," and "threatens . . . all [p]laintiffs' economic interests."

Plaintiffs allege that MHC has subtenancy agreements with the residents of the mobilehome park. MHC's subtenancy leases do not extend beyond the current term of its ground leases with defendant. However, plaintiffs allege that "those subtenancies continue by operation of law beyond the expiration date of MHC's ground leases."

Plaintiffs allege that the Mobilehome Residency Law (Civ. Code, § 798 et seq.) precludes a mobilehome resident's tenancy from being terminated except upon statutorily authorized grounds. Relevant here, a tenancy may be terminated in order to convert the mobilehome park to an alternative use. Plaintiffs allege that in order to close a mobilehome park, the mobilehome park owner must follow certain statutorily required procedures. Those procedures include giving notice to park residents and submitting a report regarding the impact of the park's proposed closure. Plaintiffs allege that defendant, not MHC, must follow these procedures, and that defendant has not done so. Plaintiffs allege that defendant "seeks to foist its objective of removing [the] residents upon MHC, despite the absence of any legal right to do so."

Plaintiffs further allege that a San Jose ordinance imposes additional requirements for mobilehome park conversions. For example, a permit is required for the conversion,

5

and the permit is issued only after the city finds, among other things, that the applicant has offered relocation, rental, and purchase assistance to mobilehome owners being displaced. Further, upon notice of the owner's intent to convert the park, residents have the right to associate together and to try to buy the park. Plaintiffs allege that as of January 2020, no application had been filed with the city to close the mobilehome park.

Plaintiffs allege that defendant "may not, by way of claimed lease terms or otherwise, circumvent the law by purporting to obligate MHC to displace residents now." Defendant's demand allegedly "conflicts with the Mobilehome Residency Law and the San Jose [M]unicipal [C]ode." Plaintiffs allege that defendant "insists . . . that MHC will be liable for any expenses that [defendant] incurs to remove [the] mobile home residents itself."

In the first cause of action for declaratory relief, plaintiffs request that the trial court declare that "(1) MHC has no obligation to deliver the property free and clear of [mobilehome] residents upon the expiration of its leases with [defendant], (2) [defendant] may not take any steps to remove or to cause the eviction of the . . . mobile home residents during MHC's lease term, and (3) [defendant] may not take steps to remove or cause the eviction of the . . . mobile home residents without complying with California [s]tate law and San Jose municipal law."

In the second cause of action for injunctive relief, plaintiffs allege that defendant's demand "if effectuated, would breach [defendant's] leases with MHC and violate the Mobile Residency Law and San Jose's mobile home park conversion ordinance." The "unlawful removal" of mobilehome park residents would also "disrupt" CountryPlace's and ECHO's "economic relationships arising out of the operations at the [mobilehome park]." The economic interests of homeowners such as Winkelmann would also be harmed by any attempt to unlawfully remove or cause the removal of park residents. Plaintiffs allege that, "[g]iven [defendant's] demand and its failure to acknowledge MHC's rights under its ground leases and [defendant's] obligations under [s]tate and

6

municipal law, an injunction is necessary (i) to protect MHC's right to quiet enjoyment and to continually operate its mobile home business, (ii) to protect the legal and property rights of MHC's subtenants and home owners, like Winkelmann, (iii) to require [defendant] to comply with its obligations under its leases with MHC, and (iv) to protect [p]laintiffs' property and economic interests in the continuation of the . . . mobile home park."

In the prayer for relief, plaintiffs request, among other things, a "declaratory judgment that [defendant] may not take any steps to remove, or to cause the removal of, any residents of the Westwinds Mobile Home Park without complying with California [s]tate law, San Jose [m]unicipal [l]aw, and its leases with MHC," and an "order . . . enjoining [defendant] from taking any steps to remove, or to cause the removal of, any residents of the Westwinds Mobile Home Park, before the expiration of MHC's leases and without complying with California state law and San Jose municipal law."

### D.  *Defendant's Demand for Arbitration Submitted to JAMS*

After the civil lawsuit was filed, but before the first amended complaint was filed, defendant submitted a demand for arbitration to JAMS against plaintiffs MHC, CountryPlace Mortgage, and ECHO Financing on January 28, 2020.  A first amended demand for arbitration was submitted to JAMS on February 21, 2020.  In the first amended demand, defendant contended that "MHC is required by the [g]round [l]eases, and [s]tate and local law to deliver the [p]roperty free of any encumbrances or third-party claims at the expiration of the lease terms," but that MHC had "anticipatorily breached its duty . . . when it publicly and affirmatively repudiated its duty to deliver the [p]roperty free of any encumbrances or third-party claims."  Defendant sought (1) damages for the alleged breaches and (2) declaratory relief regarding the rights and obligations under the ground leases.

**E.** *Defendant's Motion to Compel Arbitration in the Trial Court*

On March 2, 2020, defendant filed in the trial court a motion to compel arbitration and to stay the litigation.[4]  Defendant contended that (1) its ground leases with plaintiff MHC contained an arbitration provision, (2) plaintiffs CountryPlace Mortgage and ECHO Financing were also bound by the arbitration provision as agents of MHC or as having benefitted from the underlying ground leases, and (3) plaintiff Winkelmann was improperly joined to "derail" the arbitration and failed to state a claim.

On this latter point, defendant argued that plaintiff Winkelmann's claims for declaratory and injunctive relief were not "ripe for review."  Defendant stated that, according to the allegations of the first amended complaint, defendant had not taken any steps under the relevant law to remove Winkelmann from the property, nor had the requisite notice been given by any party to remove her.  Defendant contended that "[s]hould any party seek to remove Winkelmann in the future, Winkelmann 'may pursue the appropriate legal remedies at that time.' "

Defendant requested that arbitration be compelled as to plaintiffs MHC, CountryPlace Mortgage, and ECHO Financing, and that the litigation as to Winkelmann be stayed or dismissed.  Alternatively, defendant requested that plaintiff MHC be ordered to arbitration first, and that the litigation be stayed or dismissed as to the remaining parties.

In support of the motion, defendant provided a declaration from Bruce Nicholson, a "co-manager of the General Partner" for the Nicholson Partnership.  Nicholson stated that "[t]he present dispute between the parties is as follows:  Whether or not the leases require [p]laintiffs to deliver the [p]roperty in the same condition as it was delivered at the commencement of the leases, and if so, whether [p]laintiffs have anticipatorily

---

[4] Defendant's March 2, 2020 motion to compel arbitration superseded a February 3, 2020 motion to compel arbitration that defendant had earlier filed in the trial court.

8

breached those leases by positively repudiating their obligations to do so, thereby damaging [defendant]."

## F. *Plaintiffs' Opposition to the Motion to Compel Arbitration*

In opposition, plaintiffs MHC, CountryPlace Mortgage, and ECHO Financing (collectively, the entity plaintiffs) contended that MHC was the only plaintiff that was a party to the arbitration agreement with defendant, and therefore the other plaintiffs could not be compelled to arbitrate. The entity plaintiffs also contended, among other arguments, that section 1281.2(c) allowed a trial court to deny or stay the arbitration if there was a risk of conflicting rulings between the arbitration and the court. The entity plaintiffs argued that in this case, an arbitrator could find that MHC must remove residents by August 31, 2022, whereas the court might reach a conflicting ruling based on state and local law. The entity plaintiffs also contended that plaintiff Winkelmann's claim in the civil action was "ripe." Specifically, defendant had taken steps to remove Winkelmann by telling MHC that it was required to remove all tenants within two years and by submitting a demand for arbitration in that regard, while Winkelmann claimed that state and local law prohibited any such removal and sought an adjudication of those rights. The entity plaintiffs filed declarations in opposition to the motion to compel arbitration, including a declaration from the chief financial officer of MHC and from the senior vice president of CountryPlace Mortgage.

Plaintiff Winkelmann also filed opposition to the motion to compel arbitration. She argued that her claims in the first amended complaint were "ripe[]" because defendant had demanded that plaintiff MHC deliver the property free and clear of all subtenants by August 31, 2022, and upon MHC's refusal to do so, defendant filed an arbitration demand. Winkelmann argued that "[t]hese are direct and affirmative steps to remove [her] and the . . . other [mobilehome] residents by a date certain, which renders this controversy justiciable." Winkelmann contended that the trial court should decline to enforce the arbitration provision under section 1281.2(c), because there was a risk of

9

conflicting rulings. In this regard, she argued that the arbitrator could determine that defendant's ground lease required MHC to remove the park residents, which could be contrary to state and local law as determined by the trial court.

G. *Defendant's Reply in Support of the Motion to Compel Arbitration*

In reply, defendant contended that its dispute with plaintiff MHC – regarding whether their ground leases and state and local laws require MHC to return the land "free and clear of encumbrances or third-party claims" – was subject to an arbitration provision. Defendant argued that there was no possibility of conflicting rulings between this issue and the claims by the remaining plaintiffs regarding tortious interference with other contracts. Defendant argued that although it owned the land, it was not plaintiff Winkelmann's landlord, only MHC could evict her, and MHC would have to comply with statutory procedures in order to do so. Defendant contended that its arbitration with plaintiff MHC should proceed first, with the other plaintiffs litigating any remaining claims afterward, because the other plaintiffs' claims depended on a particular outcome of the arbitration, that is, a finding that MHC was obligated to return the property in the same condition as it was at the beginning of the leases. According to defendant, if an arbitrator determined that MHC had a contractual duty to return the property in its original condition, and if MHC decided to proceed with evicting Winkelmann, only then could the other plaintiffs assert their rights regarding MHC's obligation to comply with state and local laws protecting mobilehome owners. Until that time, the other plaintiffs' claims were not ripe.

H. *Plaintiffs' Motion for Leave to File Supplemental Opposition in the Trial Court and Defendant's Second Amended Demand for Arbitration at JAMS*

Plaintiffs MHC, CountryPlace Mortgage, and ECHO Financing filed a motion for leave to file a supplemental opposition due to "two factual developments that occurred"

10

after the filing of their opposition.[5] In their proposed supplemental opposition, the entity plaintiffs first explained that defendant had submitted a second amended arbitration demand with JAMS seeking arbitration with MHC only, not CountryPlace Mortgage and ECHO Financing.[6] In the absence of a demand for arbitration with these latter two parties, the entity plaintiffs contended that there was no basis to compel CountryPlace Mortgage's and ECHO Financing's claims to arbitration. Second, the entity plaintiffs stated that San Jose had passed a resolution which amended the city's general plan, designated the property at issue as a mobilehome park, and precluded development of the property for any other use. The entity plaintiffs argued that these events provided further reasons for the court to deny the motion to compel arbitration.

Defendant filed opposition to the entity plaintiffs' request for leave to file supplemental opposition. Defendant contended that neither of the two events had any bearing on whether the third party litigation exception to arbitration under section 1281.2(c) applied. Also, regarding the elimination of CountryPlace Mortgage and ECHO Financing from defendant's arbitration demand, defendant contended that to the extent these two entities sought to bring claims against defendant involving the ground leases, these entities were "equitably estopped from avoiding the leases' arbitration provisions."

---

[5] It does not appear from the record that the trial court expressly ruled on the motion.

[6] In the second amended arbitration demand, defendant continued to contend, as it had in its prior arbitration demand, that MHC was required under the ground leases and state and local law "to deliver the [p]roperty free of any encumbrances or third-party claims at the expiration of the lease terms," and that MHC had "anticipatorily breached its duty . . . when it publicly and affirmatively repudiated its duty to deliver the [p]roperty free of any encumbrances or third-party claims." Defendant continued to seek (1) damages for the alleged breaches and (2) declaratory relief regarding the rights and obligations under the ground leases.

11

## I. *The Trial Court's Order*

A hearing was held on defendant's motion to compel arbitration. On July 29, 2020, the trial court filed a statement of decision and order denying the motion to compel arbitration. In denying the motion, the court made the following findings.

First, the trial court determined that the dispute between defendant and plaintiff MHC was covered by the arbitration provision.

Second, the trial court determined that plaintiffs CountryPlace Mortgage and ECHO Financing were nonsignatories to the arbitration agreement and could not be compelled to arbitrate under any of the theories asserted by defendant.

Third, the trial court determined that under section 1281.2(c), there was a possibility of conflicting rulings on a common issue or fact. In making this determination, the court found that: (1) defendant was involved in a court action with a signatory to the arbitration agreement (plaintiff MHC) and three nonsignatories to the arbitration agreement (plaintiffs CountryPlace Mortgage, ECHO Financing, and Winkelmann); (2) the arbitration and the court action involved the same transaction, that is, the disposition of the mobilehome park at the end of the lease based on the lease terms and state and local laws; and (3) there was a possibility of inconsistent rulings by the arbitrator and the court regarding whether removal of the mobilehomes at the end of the lease term was contemplated by the lease and allowed by law. For example, defendant might obtain an arbitration decision requiring the mobilehome park residents to be removed from the park at the end of the lease, while plaintiffs obtained a court decision allowing the residents to remain on the property.

In finding the possibility of conflicting rulings, the trial court rejected defendant's contention that plaintiff Winkelmann was not a proper party to the court action, or that she was otherwise added for the sole purpose of defeating arbitration. The court also determined that whether Winkelmann's claims were ripe turned on the merits of her claims, and that the merits of her claims were not a proper consideration in ruling on a

12

motion to compel arbitration. Even if the court considered the ripeness issue, the court determined that defendant's alleged demand that the property be delivered free of subtenancies in 2022 "necessarily implicates the disposition of the mobile home subtenancies, including Winkelmann's home, and if no judicial determination is made she will suffer hardship in the uncertainty, instability, and inability to plan one way or another. . . . Here, real people or entities are under threat due to [defendant's] alleged demand that the property be cleared in two years, and the Court is being asked to make a determination about the end of the lease. This is neither hypothetical nor advisory."

Fourth, regarding its discretion to stay or deny arbitration, the trial court denied arbitration by refusing to enforce the arbitration agreement because "all [p]laintiffs seek identical relief on a common issue, and there is a possibility of unworkable, inconsistent rulings."

Defendant filed a notice of appeal regarding the order denying arbitration.

### III. DISCUSSION

Defendant contends that the trial court erred in denying defendant's motion to compel arbitration with plaintiff MHC. Defendant argues that the claims by the other three plaintiffs (ECHO Financing, CountryPlace Mortgage, and Winkelmann) were not justiciable, that there was no possibility of conflicting rulings with the arbitration, and that the court otherwise abused its discretion in denying arbitration.

We first set forth general legal principles regarding a motion to compel arbitration as well as the standard of review before addressing defendant's contentions.

#### A. *General Legal Principles Regarding Compelling Arbitration*

The CAA applies to private arbitration. (*Heimlich v. Shivji* (2019) 7 Cal.5th 350, 363.) Under the CAA, "[w]hen the parties to an arbitrable controversy have agreed in writing to arbitrate it and one has refused, the court, under section 1281.2, must ordinarily grant a petition to compel arbitration. Exceptions to this rule are recognized by statute

13

and judicial decision." (*Wagner Construction Co. v. Pacific Mechanical Corp.* (2007) 41 Cal.4th 19, 26, fns. omitted.)

Relevant here, section 1281.2(c) is a statutory exception "address[ing] the peculiar situation that arises when a controversy also affects claims by or against other parties not bound by the arbitration agreement." (*Cronus Investments, Inc. v. Concierge Services* (2005) 35 Cal.4th 376, 393.) This exception applies when (1) "[a] party to the arbitration agreement is also a party to a pending court action . . . with a third party," (2) the arbitration and the court action "aris[e] out of the same transaction or series of related transactions," and (3) "there is a possibility of conflicting rulings on a common issue of law or fact." ( § 1281.2(c).) "[A] trial court may deny a party's contractual right to arbitration only when all of section 1281.2(c)'s conditions are satisfied." (*Acquire II, Ltd. v. Colton Real Estate Group* (2013) 213 Cal.App.4th 959, 980 (*Acquire II, Ltd.*).) In making this determination, the court may consider the allegations of the plaintiff's complaint and the evidence in the record. (*Abaya v. Spanish Ranch I, L.P.* (2010) 189 Cal.App.4th 1490, 1499 (*Abaya*); *Acquire II, Ltd.*, *supra*, at pp. 972, 974.)

If a trial court determines that the requirements of section 1281.2(c) are met, it may, among other options, (1) "refuse to enforce the arbitration agreement," (2) "order arbitration among the parties who have agreed to arbitration and stay the pending court action . . . pending the outcome of the arbitration proceeding," or (3) "stay arbitration pending the outcome of the court action." (§ 1281.2.) "What the trial court chooses to do in this situation is a matter of its discretion, guided largely by the extent to which the possibility of inconsistent rulings may be avoided." (*Metis Development LLC v. Bohacek* (2011) 200 Cal.App.4th 679, 692-693 (*Metis*).)

## B. *The Standard of Review*

An order denying a motion to compel arbitration is an appealable order. (§ 1294, subd. (a).) On appeal, a trial court's application of section 1281.2(c) is reviewed for abuse of discretion. (*Mercury Ins. Group v. Superior Court* (1998) 19 Cal.4th 332, 349

14

[abuse of discretion standard]; *id.* at p. 350 [trial court "could reasonably have determined" that there was a possibility of conflicting rulings], accord, *Metis*, *supra*, 200 Cal.App.4th at p. 691; *Abaya*, *supra*, 189 Cal.App.4th at p. 1496.)  "The abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review.  The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711-712, fns. omitted.)

### C. *Analysis*

### 1. The Trial Court Did Not Abuse Its Discretion in Denying Arbitration

We determine that the trial court did not abuse its discretion in ruling that section 1281.2(c) applied in this case and in denying arbitration.

First, defendant is "[a] party to the arbitration agreement" and "also a party to a pending court action . . . with a third party," including CountryPlace Mortgage, ECHO Financing, and Winkelmann (collectively, the third parties).  (§ 1281.2(c).)

Second, the arbitration and the court action "aris[e] out of the same transaction or series of related transactions," that is, the disposition of the mobilehome park at the end of the lease.  (§ 1281.2(c).)  Specifically, in the arbitral forum, defendant alleges in its amended arbitration demand that "MHC is required by the [g]round [l]eases, and [s]tate and local law to deliver the [p]roperty free of any encumbrances or third-party claims at the expiration of the lease terms," but that MHC had "anticipatorily breached its duty . . . when it publicly and affirmatively repudiated its duty to deliver the [p]roperty free of any encumbrances or third-party claims."  Defendant seeks declaratory relief, as well as contract damages.  By comparison, in the judicial forum, plaintiffs allege in their first amended complaint that the defendant's demand would, among other things, "violate state and San Jose municipal law, which protect mobile home residents . . . from being

15

displaced from their homes unless the landowner—here, [defendant]—complies with certain procedures, which [it] has not even begun to do." Plaintiffs allege that defendant "may not, by way of claimed lease terms or otherwise, circumvent the law by purporting to obligate MHC to displace residents now." Plaintiffs allege that defendant "seeks to foist its objective of removing [the] residents upon MHC, despite the absence of any legal right to do so." Plaintiffs allege that the mobilehome residents' subtenancy leases "continue by operation of law beyond the expiration date of MHC's ground leases." Plaintiffs seek declaratory relief, as well as injunctive relief. In view of the allegations in defendant's amended arbitration demand and the allegations in plaintiffs' first amended complaint, the claims in both the arbitral forum and the judicial forum pertain to the disposition of the mobilehome park at the end of the ground leases.

Third, "there is a possibility of conflicting rulings on a common issue of law or fact." (§ 1281.2(c).) As we have just explained, both the arbitration and the court action pertain to the disposition of the mobilehome park when the ground leases expire. As the trial court framed the common issue of law or fact in its statement of decision: "[W]hat will happen when the lease term expires"? On this issue, the record reflects that the parties dispute whether the mobilehome residents must be removed upon expiration of the ground leases and who may remove the residents. Resolving these issues in two different forums raises "a possibility of conflicting rulings." (§ 1281.2(c).) As the trial court explained in its statement of decision, a court could find that "the law does not allow[]the removal of all of the mobile homes from the property at the end of the lease term, while an arbitrator makes a contrary finding. This would leave Winkelmann or the other Entity Plaintiffs with a judicially rendered basis for keeping the subtenancies on the property, while [defendant] would have a judgment to the contrary." Based on the record, "the possibility of conflicting rulings on issues of law or fact plainly exist[]." (*Abaya*, *supra*, 189 Cal.App.4th at p. 1498.)

16

The trial court, having concluded that the three requirements of section 1281.2(c) were met, exercised its discretion to deny arbitration between defendant and plaintiff MHC. The court explained that it selected this result among the various alternatives provided by section 1281.2 because plaintiffs (including Winkelmann) sought "identical declaratory or injunctive relief on the same issue of the disposition or continuation of the mobile home park at the end of the lease term . . . ." We find no abuse of discretion in the court's decision to deny arbitration under these circumstances.

### 2. Defendant Fails to Demonstrate Error by the Trial Court

We are not persuaded by defendant's contentions that the trial court's denial of arbitration was erroneous.

First, defendant argues that there is no risk of conflicting rulings. Defendant characterizes the arbitration as involving only a "ground-lease dispute" regarding "whether the ground leases require MHC to return the land at the leases' expiration in 2022 without encumbrances created by MHC and its predecessors." Defendant contends that this contract claim does "not share any issues" with the claims by the third parties (plaintiffs CountryPlace Mortgage, ECHO Financing, and Winkelmann) in the court action. Defendant even goes so far as to argue that "the resolution of the ground-lease dispute has little or no bearing on whether and when the park could close."

However, defendant in its amended arbitration demand seeks declaratory relief based on its contention that MHC is required by the ground leases "*and State and local law* to deliver the [p]roperty free of any encumbrances or third-party claims at the expiration of the lease terms." (Italics added.) The third parties seeking declaratory relief in the court action take the opposite position, contending that defendant's demand "*violate*[*s*] state and San Jose municipal law, which protect mobile home residents . . . from being displaced from their homes . . . ." (Italics added.) The third parties allege that defendant "may not, by way of claimed lease terms or otherwise, circumvent the law by purporting to obligate MHC to displace residents now." The third parties further

17

allege that the mobilehome residents' "subtenancies continue by operation of law beyond the expiration date of MHC's ground leases." The parties thus dispute what rights they have under state and local law as it pertains to the cessation or continuation of operations of the mobilehome park at the expiration of the ground leases.

Defendant on appeal asserts that its reference to "State and local law" in the amended arbitration demand does not pertain to the mobilehome-related laws relied on by the third parties, but rather that it is referring to the law regarding subtenancies. In view of the competing allegations about whether state and local laws require or allow the removal of the mobilehome park residents upon the expiration of the ground leases, and who may or must do the removal, "the possibility of conflicting rulings on issues of law or fact plainly exist[]." (*Abaya*, *supra*, 189 Cal.App.4th at p. 1498.) Defendant's reliance on a different set of laws than the third parties does not change our conclusion. The relevant point is that there is a risk of conflicting rulings regarding the disposition of the mobilehome park upon the expiration of the ground leases.

We observe that defendant now argues for the first time in their reply brief on appeal that the laws relied on by the third parties concerning mobilehomes do not apply to the ground leases because the ground leases were executed before those laws were enacted. Defendant further contends in its reply brief on appeal that although the ground leases were later amended after the laws went into effect, those laws still do not apply to the ground leases.

We observe that the third parties alleged in their amended complaint in the trial court that defendant's demand for removal of the mobilehome residents was precluded by state and local law concerning mobilehomes. Plaintiffs specifically alleged that defendant "may not, by way of claimed lease terms or otherwise, circumvent the law by purporting to obligate MHC to displace residents now." The third parties thereafter contended in their written opposition to defendant's motion to compel arbitration that there was a risk of conflicting rulings based on those state and local laws. Defendant's

18

current contention in its reply brief on appeal that those laws do not apply to the ground leases was not raised below or in defendant's opening brief on appeal. Appellate courts ordinarily will not consider a new issue raised for the first time in the reply brief. (*Campos v. Anderson* (1997) 57 Cal.App.4th 784, 794, fn. 3; *Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764-765.)

Even if defendant had properly raised this issue, defendant fails to sufficiently demonstrate that the state and local mobilehome laws do not apply to the ground leases. In support of the argument that the later enacted mobilehome laws do not apply to the earlier executed ground leases, defendant quotes the following statement from *Swenson v. File* (1970) 3 Cal.3d 389: "[L]aws enacted subsequent to the execution of an agreement are not ordinarily deemed to become part of the agreement unless its language clearly indicates this to have been the intention of the parties. [Citations.]" (*Id.* at p. 393.) Defendant fails to address the latter half of this quote regarding whether, in this case, there is language in the ground leases that indicates the parties' intent to deem subsequently enacted laws part of their agreements. (*Ibid.*; see, e.g., *City of Torrance v. Workers' Comp. Appeals Bd.* (1982) 32 Cal.3d 371, 379 [" '[When] an instrument provides that it shall be enforced according either to the law generally or to the terms of a particular . . . statute, the provision must be interpreted as meaning the law or the statute in the form in which it exists at the time of such enforcement' "].) Defendant also does not persuasively address, with relevant legal authority, whether the lease extensions, which occurred after the mobilehome laws went into effect, operated to incorporate the changes in the law.

We express no opinion here regarding whether state and local laws pertaining to mobilehomes apply, or do not apply, to the ground leases that defendant currently seeks to enforce. For purposes of this appeal, we determine only that defendant has failed to conclusively demonstrate that those laws do not apply to the leases that defendant currently seeks to enforce, and that defendant has therefore failed to demonstrate that

19

the trial court erred in finding the possibility of conflicting rulings. (See *Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609 [appellant has the burden of showing reversible error]; *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 822 [same].)

Second, defendant contends that its arbitration demand simply seeks a "declaration about the meaning of the ground leases," and that an arbitrator's decision in this regard could not compel plaintiff MHC to actually *remove* park residents. Defendant argues that none of its arbitration demands "seek[s] any relief, such as an injunction or specific performance, that would compel MHC to comply with a duty to return the land without subtenancies." The record reflects, however, that defendant in arbitration has demanded that MHC remove residents by the end of the ground leases, has sought a declaration in arbitration regarding MHC's alleged obligation in that regard, and has sought contract damages in arbitration for MHC's "anticipatory breaches" in failing to comply with defendant's demand. Damages and specific performance are each considered "coercive relief . . in which a party is ordered by the court to do or to refrain from doing something . . . ." (*Mycogen Corp. v. Monsanto Co*. (2002) 28 Cal.4th 888, 898.) Thus, while defendant has not sought specific performance as a remedy, it has sought the "coercive relief" of damages for MHC's stated refusal to remove the mobilehome park residents. (*Ibid.*)

Third, defendant contends that the claims by the third parties (plaintiffs CountryPlace Mortgage, ECHO Financing, and Winkelmann) for declaratory and injunctive relief "are not causes of action." Defendant argues that the third parties instead allege tort causes of action, specifically tortious interference with contract, which is "distinct" from MHC and defendant's ground lease dispute which "sounds exclusively in contract." We understand defendant to contend that, because the tort claims by the third parties are distinct from the contract claim between MHC and defendant, the trial court erred in finding the possibility of conflicting rulings.

We are not persuaded by the defendant's characterization of the third parties' claim for declaratory relief as one actually sounding in tort. Section 1060 provides for declaratory relief as follows: "Any person interested under a written instrument, . . . or under a contract, *or who desires a declaration of his or her rights or duties with respect to another*, or in respect to, in, over or upon property, . . . *may, in cases of actual controversy relating to the legal rights and duties of the respective parties*, *bring an original action* . . . for a declaration of his or her rights and duties in the premises, including a determination of any question of construction or validity arising under the instrument or contract. He or she may ask for a declaration of rights or duties, either *alone* or with other relief; and the court may make a binding declaration of these rights or duties, whether or not further relief is or could be claimed at the time. The declaration may be either affirmative or negative in form and effect, and the declaration shall have the force of a final judgment. The declaration may be had before there has been any breach of the obligation in respect to which said declaration is sought." (Italics added.)

As indicated by the language we have italicized, section 1060 expressly authorizes an "original action" for a declaration of rights and permits a claim for declaratory relief to be filed "alone." In other words, under section 1060, a plaintiff may "pursue a claim for declaratory relief in the absence of another cause of action or other requested relief." (*Ball v. FleetBoston Financial Corp.* (2008) 164 Cal.App.4th 794, 800.) "The existence of an 'actual controversy relating to the legal rights and duties of the respective parties,' suffices to maintain an action for declaratory relief. [Citation.]" (*Ludgate Ins. Co. v. Lockheed Martin Corp.* (2000) 82 Cal.App.4th 592, 605.) Indeed, contrary to defendant's contention in this case that no cause of action for declaratory relief exists, in *Olszewski v. Scripps Health* (2003) 30 Cal.4th 798 (*Olszewski*), the California Supreme Court determined that the plaintiff "adequately pled a claim for declaratory relief under Code of Civil Procedure section 1060 even though she did not separately identify such a cause of action. [Citations.]" (*Id*. at p. 807.) The California Supreme Court explained

21

that "[t]he complaint asked the court to adjudge the rights and duties of plaintiff and defendants with respect to defendants' lien and alleged facts establishing an 'actual controversy' appropriate for declaratory relief. [Citation.] As such, plaintiff was entitled to a declaration of her rights and duties under defendants' lien. [Citation.]" (*Id.* at pp. 807-808.)

In this case, the third parties allege that defendant's demand for removal of all the mobilehome residents, by the expiration of the ground leases, conflicts with state law and the municipal code. The third parties seek declaratory relief regarding this controversy. They have properly "identif[ied] such a cause of action." (*Olszewski*, *supra*, 30 Cal.4th at p. 807.)

Fourth, defendant contends that the claims by the third parties (plaintiffs CountryPlace Mortgage, ECHO Financing, and Winkelmann) in the court action are not ripe, and that the third parties lack standing. Defendant argues that, because the third parties' claims are not ripe and the parties lack standing, the claims by these parties "do not pose the risk of conflicting rulings."

As an initial matter, the parties dispute whether a trial court may properly consider justiciability issues, including ripeness or standing, on a motion to compel arbitration. (See § 1281.2 ["If the court determines that a written agreement to arbitrate a controversy exists, an order to arbitrate that controversy may not be refused on the ground that the petitioner's contentions lack substantive merit"].) Assuming, without deciding, that a trial court may consider these issues on a motion to compel arbitration, defendant fails to show that the court erred in denying arbitration based on lack of ripeness or lack of standing.

"The ripeness requirement, a branch of the doctrine of justiciability, prevents courts from issuing purely advisory opinions. [Citation.]" (*Pacific Legal Foundation v. California Coastal Com.* (1982) 33 Cal.3d 158, 170 (*Pacific Legal Foundation*).) " 'A controversy is "ripe" when it has reached, but has not passed, the point that the facts have

22

sufficiently congealed to permit an intelligent and useful decision to be made.' [Citation.]" (*Id.* at p. 171.)

In assessing ripeness and the availability of declaratory relief under section 1060, " '[t]he "actual controversy" referred to in [section 1060] is one which admits of definitive and conclusive relief by judgment within the field of judicial administration, as distinguished from an advisory opinion upon a particular or hypothetical state of facts. The judgment must decree, not suggest, what the parties may or may not do.' [Citation.]" (*Pacific Legal Foundation*, *supra*, 33 Cal.3d at p. 171.) "In determining whether a controversy is ripe in the context of a request for declaratory relief, we engage in [a] two-pronged analysis . . . : '(1) whether the dispute is sufficiently concrete to make declaratory relief appropriate; and (2) whether the withholding of judicial consideration will result in a hardship to the parties.' [Citations.] 'Under the first prong, the courts will decline to adjudicate a dispute if "the abstract posture of [the] proceeding makes it difficult to evaluate . . . the issues" [citation], if the court is asked to speculate on the resolution of hypothetical situations [citation], or if the case presents a "contrived inquiry" [citation]. Under the second prong, the courts will not intervene merely to settle a difference of opinion; there must be an imminent and significant hardship inherent in further delay.' [Citations.]" (*Communities for a Better Environment v. State Energy Resources Conservation & Development Com.* (2017) 19 Cal.App.5th 725, 733-734 (*Communities for a Better Environment*).) Whether a matter is ripe for adjudication is a question of law subject to de novo review. (*Id.* at p. 732.)

Regarding the first prong of the ripeness inquiry, we determine that " 'the dispute is sufficiently concrete to make declaratory relief appropriate.' " (*Communities for a Better Environment*, *supra*, 19 Cal.App.5th at p. 733.) As alleged in the amended complaint, the dispute between the parties involves whether, as contended by defendant, MHC is obligated by the ground leases to remove all mobilehome residents at the expiration of the ground leases, or whether, as contended by the third parties (and MHC),

state and local law precludes the residents' removal after the expiration of the ground leases unless and until defendant complies with certain procedures to remove them. The record reflects that defendant has already demanded that MHC remove the residents by the expiration of the ground leases, and defendant has gone so far as to seek contract damages for MHC's expressed refusal to do so. The dispute, therefore, is neither abstract, hypothetical, nor contrived. (*Id.* at pp. 733-734.) The third parties are not seeking " 'an advisory opinion upon a . . . hypothetical state of facts,' " but rather a judgment " 'decree[ing] . . . what the parties may or may not do.' [Citation.]" (*Pacific Legal Foundation*, *supra*, 33 Cal.3d at p. 171.)

We disagree with defendant that the third parties must wait until the park closes before their request for declaratory relief is ripe. According to defendant, a series of events must first occur, culminating in the park's closure, before the third parties may sue. Under defendant's asserted chronology of events, an arbitrator or trial court must first determine whether MHC is obligated to remove the mobilehome residents. Defendant acknowledges that as to this issue, the third parties dispute, based on state and local law among other grounds, that MHC has a duty to remove the residents. Indeed, to the contrary, the third parties contend that only defendant, as landowner, can remove the residents, and only if defendant complies with state and local requirements. It is this dispute regarding the interpretation and application of state and local law that forms the basis for the third parties' request for declaratory relief. "An action for declaratory relief lies when the parties are in fundamental disagreement over the construction of particular legislation . . . ." (*Alameda County Land Use Assn. v. City of Hayward* (1995) 38 Cal.App.4th 1716, 1723 (*Alameda County Land Use Assn.*).)

The cases cited by defendant do not dictate a different result here. For example, in *Stonehouse Homes LLC v. City of Sierra Madre* (2008) 167 Cal.App.4th 531 (*Stonehouse*), the appellate court determined that a real estate developer's claim for declaratory relief regarding the validity of a city's moratorium resolution was not ripe,

24

because the resolution simply directed the planning commission and an advisory committee "to prepare *final recommendations* for an ordinance" and "thus merely gave notice to the public of potential legislation that might be adopted in the future . . . ." (*Id.* at p. 541; see *id.* at pp. 535, 539, 540.) Under these circumstances, the issuance of a declaration "would have required the trial court[] to speculate about hypothetical future actions by the [c]ity, the city council and the planning commission." (*Id.* at p. 540.) In contrast, in this case, defendant has made a concrete demand that the mobilehome residents, which includes plaintiff Winkelmann, be removed by MHC upon the expiration of the ground leases. Unlike in *Stonehouse*, the dispute over whether the mobilehome residents may be removed upon the termination of the ground leases, and who may do the removing, does not require the trial court to "speculate as to what legislation . . . might [be] adopt[ed]" by state or local authorities. (*Id.* at p. 541.) We are similarly not persuaded by defendant's reliance on *Pacific Legal Foundation*, *supra*, 33 Cal.3d at page 174 (plaintiffs' challenge in the abstract to California Coastal Commission guidelines entailed "sheer guesswork to conclude that the [c]ommission will abuse its authority by imposing impermissible conditions on any permits required") (see *id.* at p. 172) and *Wilson & Wilson v. City Council of Redwood City* (2011) 191 Cal.App.4th 1559, 1583 (plaintiff's claim "required the trial court to speculate not only on the content of the [city's] future parking facilities agreement, but also on whether the [c]ity would take the legislative steps necessary to initiate eminent domain proceedings against [plaintiff's] property").

Regarding the second prong of the ripeness inquiry, we determine that " 'the withholding of judicial consideration will result in a hardship to the parties.' [Citations.]" (*Communities for a Better Environment*, *supra*, 19 Cal.App.5th at p. 733.) Declaratory relief in this case would not " 'merely . . . settle a difference of opinion.' " (*Id.* at p. 734.) Plaintiff Winkelmann in particular is facing the imminent prospect of being forced out of her residence based on defendant's purportedly unlawful demand that the mobilehome

25

park be cleared upon the expiration of the ground leases. As defendant has *already* made the demand for the park to be cleared upon the expiration of the leases and indeed has already sought contract damages against MHC's for its stated refusal, Winkelmann is entitled to a declaration of her rights regarding whether she may remain at the park upon the expiration of the ground leases and until defendant complies with state and local law. In sum, defendant fails to show error in the trial court denying arbitration based on the purported lack of ripeness of the third parties' declaratory relief claim.

We also determine that defendant fails to show error based on the third parties' purported lack of standing. Defendant contends that "the declaratory-judgment statute limits standing to parties that have rights or duties under a contract . . . ." Based on this purported limitation to a declaratory judgment, defendant argues that the third parties, "as merely incidental beneficiaries of the ground lease[,] do not have rights or duties under these agreements" and therefore they lack standing to seek declaratory relief regarding the ground leases.

Defendant fails to cite any legal authority supporting the proposition that declaratory relief is limited to a party's rights or duties under a contract. To the contrary, "[a]n action for declaratory relief [also] lies when the parties are in fundamental disagreement over the construction of particular legislation . . . ." (*Alameda County Land Use Assn.*, *supra*, 38 Cal.App.4th at p. 1723; accord, *Walker v. County of Los Angeles* (1961) 55 Cal.2d 626, 637 ["The interpretation of ordinances and statutes are proper matters for declaratory relief"]; *Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1250, fn. 5 ["It is well established that parties may seek declaratory relief with respect to the interpretation and application of local ordinances"]; *Lane v. City of Redondo Beach* (1975) 49 Cal.App.3d 251, 255 [plaintiffs' claim that city violated statutory and constitutional provisions "stated a proper subject of declaratory relief"]; see *Siciliano v. Fireman's Fund Ins. Co.* (1976) 62 Cal.App.3d 745, 753 ["Section 1060 does not require the existence of a legal instrument between parties as a

predicate for declaratory relief"]; *Tashakori v. Lakis* (2011) 196 Cal.App.4th 1003, 1012, fn. 6.) In this case, as defendant acknowledges, the third parties dispute, based on state and local law among other grounds, that MHC has a duty to remove the residents. The third parties contend that only defendant, as landowner, can remove the residents, and only if defendant complies with state and local requirements. This dispute regarding the interpretation and application of state and local law, including regarding the third parties' alleged rights under those laws, is a proper subject for declaratory relief by the third parties.

Fifth, defendant contends that the trial court abused its discretion in choosing to deny arbitration altogether, rather than staying the court action and allowing the arbitration to proceed first. Defendant's argument, however, is premised on the contention that there is no possibility of conflicting rulings between an arbitration concerning the ground lease dispute and the claims raised in the court action. We have rejected this argument for the reasons set forth above. Where, as here, there is a possibility of conflicting rulings, "[w]hat the trial court chooses to do in this situation is a matter of its discretion, guided largely by the extent to which the possibility of inconsistent rulings may be avoided." (*Metis*, *supra*, 200 Cal.App.4th at pp. 692-693.) Although there is a "strong California policy favoring arbitration," there is an "equally compelling argument that the Legislature has also authorized trial courts to refuse enforcement of an arbitration agreement when . . . there is a possibility of conflicting rulings. [Citation.]" (*C. V. Starr & Co. v. Boston Reinsurance Corp.* (1987) 190 Cal.App.3d 1637, 1642, fn. omitted (*C. V. Starr*).) Given the possibility of conflicting rulings on a common issue of law or fact that was central to both the arbitration and court action, we determine that the trial court did not abuse its discretion in denying arbitration altogether.

Sixth, defendant contends that "the totality of the circumstances strongly suggests that MHC induced the third parties to join this lawsuit so MHC could renege on its

express contractual duty to arbitrate." Defendant contends that "[d]enying a motion to compel arbitration here is wrong and unfair because it encourages other parties to copy MHC's gamesmanship—undermining this state's strong policy in favor of enforcing arbitration agreements."

The trial court rejected this argument below. The court found that plaintiff Winkelmann in particular was "seeking all of the relief in the [first amended complaint], and was not merely added into a few causes of action. She also is a named party, not an unnamed 'Doe,' and as pleaded she owns a home located in the mobile home community, and has a defined interest in the declaratory relief sought, as it impacts her ability to stay in her home." The court declined to conclude that "she was added merely for the purpose of avoiding arbitration."

We agree with the trial court's determination that plaintiff Winkelmann was properly added to the amended complaint in view of Winkelmann's significant and substantial interest in the determination of whether defendant may lawfully force MHC to remove the mobilehome park residents upon the expiration of the ground leases. As for defendant's assertion that it is unfair to deny arbitration based on the presence of third parties in the court action, "the potential result of [defendant's] suggested procedure [to allow arbitration to instead proceed first] would be to give the arbitrator['s] decision binding effect on all the [third parties] as well, even though, of course, they are not legally bound to arbitrate." (*C. V. Starr*, *supra*, 190 Cal.App.3d at p. 1642.)

In sum, the statutory exception to arbitration under section 1281.2(c) applies when (1) "[a] party to the arbitration agreement is also a party to a pending court action . . . with a third party," (2) the arbitration and the court action "aris[e] out of the same transaction or series of related transactions," and (3) "there is a possibility of conflicting rulings on a common issue of law or fact." We conclude that the record supports the trial court's findings that all three requirements of section 1281.2(c) were satisfied, and that no abuse of discretion has been shown in the court's decision to deny arbitration.

28

## IV.  DISPOSITION

The order denying defendant The Nicholson Family Partnership's petition to compel arbitration is affirmed.

_____
BAMATTRE-MANOUKIAN, J.

WE CONCUR:

_____
ELIA, ACTING P.J.

_____
WILSON, J.

*MHC Operating Limited Partnership, et al. v. The Nicholson Family Partnership*
**H048357**